UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| HOLLY NYGAARD and QUANELL GEE, on behalf of themselves and all others similarly situated, | ) ) ) ) | C/A: 4:20-CV-00233-JD |
| Plaintiffs, | ) ) | **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST** |
| v. | ) ) ) | **PLAINTIFFS' HOLLY NYGAARD AND QUANELL GEE, ON BEHALF OF THEMSELVES AND ALL OTHERS** |
| BEACH HOUSE HOSPITALITY GROUP, LLC d/b/a BEACH HOUSE BAR & GRILL; and EREZ SUKARCHI, individually, | ) ) ) ) | **SIMILARLY SITUATED** |
| | ) | **(ORAL ARGUMENT REQUESTED)** |
| Defendants. | ) | |

Defendants, Beach House Hospitality Group, LLC d/b/a Beach House Bar & Grill ("Beach House") and Erez Sukarchi, individually ("Sukarchi") (collectively, "Defendants"), hereby move for a summary judgment against Plaintiffs, Holly Nygaard and Quanell Gee, on behalf of themselves and all others similarly situated (collectively, "Plaintiffs"), with regard solely to: (1) Plaintiffs' claim that Defendants violated the Section 203(m) of the FLSA by distributing a portion of the tips Plaintiffs contributed to the Beach House tip pool to employees who did not customarily and regularly receive tips (i.e., kitchen and janitorial staff); and (2) Plaintiffs' claim that Defendant Erez Sukarchi, individually, violated the FLSA and the South Carolina Payment of Wages Act. The grounds for Defendants' Motion are that all undisputed material facts in this matter demonstrate that (1) Defendants did not redistribute any tips contributed by Plaintiffs into the Beach House tip pool to employees who did not customarily and regularly receive tips,[1] and (2)

---

[1] Defendants' strongly deny tips from the Beach House tip pool were redistributed to back of the house employees. Beach House's General Manager and four managers on duty have testified Beach House never distributed tips to back of the house employees. (See infra Section II(A)(1),

that Sukarchi neither exercised operational control over Beach House or Plaintiffs, nor knowingly permitted Beach House to violate the South Carolina Payment of Wages Act.

## I.    NATURE OF THE CASE

Beach House is a bar and restaurant located on North Ocean Boulevard in Myrtle Beach, South Carolina. Sukarchi owns a fifty percent (50%) membership interest in Beach House. (Ex. 1 – 30(b)(6) Depo. of Beach House Excerpts, p. 8). However, Sukarchi is only a passive owner, who is not involved in Beach House's operations. (See Id. at pp. 20-21, Ex. 2 – Depo. of Ghidella Excerpts, pp. 51-53, 55, 133, 233-34; see also infra fn. 10, Ex. 17 – Affidavit of Sukarchi, p. 1, paras. 2-4).

The Named Plaintiffs, Holly Nygaard ("Nygaard") and Quanell Gee ("Gee"), are individuals who were formerly employed by Beach House as a bartender (Nygaard) and as a server (Gee). The Named Plaintiffs filed this lawsuit against Beach House and Sukarchi on January 23, 2020, alleging a Collective Action under the Fair Labor Standards Act, 29 U.S.C. § 201, et. seq. ("FLSA"), and alleging a Class Action for violation of the SCPWA, S.C. Code Ann. § 41-10-10, et. seq. under Rule 23, FRCP. (See ECF No. 1). In May 2020, Defendants consented to Plaintiffs' Motion for Conditional Class Certification.[2] (See ECF No. 22). A thirty (30) day Opt-In Period was then held, during which time court-approved notice and consent to join lawsuit forms were sent to the putative class by a third-party administrator. (See ECF No. 25). The Opt-In period ended on July 1, 2020. Following the Opt-In period, there exists a total of thirteen (13) Plaintiffs in this case, of which twelve (12) have asserted damages.

---

pp. 6-8). After extensive discovery in this matter, Plaintiffs have failed to set forth any admissible evidence to the contrary. (See infra Sections II(A)(2) and IV(A), pp. 9-11, 21-25).

[2] Defendants consented to conditional class certification early in this case; however, now that extensive discovery has been conducted, Defendants expect to move for de-certification.

All Plaintiffs in this lawsuit are former Beach House servers and bartenders who were tipped employees under the FLSA. Beach House paid Plaintiffs a direct, or hourly, rate less than the statutory minimum wage of $7.25 per hour by utilizing the FLSA's tip credit provision. As it pertains to the Defendants' Motion for Summary Judgment, Plaintiffs have alleged Defendants were not entitled to pay Plaintiffs pursuant to the FLSA's tip credit provision because tips Plaintiffs remitted into the Beach House Tip Pool were redistributed to "other employees who were not employees who 'customarily and regularly received tips[.]'" (See ECF No. 57, pp. 5, 7, 8 paras. 25(A), 32, 35, 40). With regard to Plaintiffs' improper tip sharing claim, Plaintiffs are thus seeking to recover, from both Beach House and Sukarchi, an amount equal to the difference between the tip credit wages Plaintiffs were paid and the minimum wage Plaintiffs allege they should have been paid for all hours worked (hereinafter, the "Wage Gap") and reimbursement of the tips Plaintiffs paid into the Beach House tip pool. (Id. at pp. 8, 10, paras. 40-42, 56-57).

Defendants absolutely deny Beach House redistributed tips from the Beach House tip pool to employees who did not customarily or regularly receive tips (i.e., back of the house employees), such as kitchen and/or janitorial staff. Beach House, its General Manager, and all managers on duty who were employed during the relevant time period, have all testified no such policy or practice existed.[3] (See infra Section II(A)(1), pp. 6-8). After extensive discovery has been conducted in this case, Plaintiffs have failed to produce any admissible evidence that tips were shared with back of the house employees.[4] (See infra Section II(A)(2) and IV(A), pp. 9-11, 21-25).

---

[3] See Ex. 2 – Depo. of Ghidella Excerpts, pp. 112-113, 233-234, Ex. 3 – Depo. of Cargill Excerpts, pp. 29-30, 44, Ex. 4 – Depo. of Goodbread Excerpts, pp. 17, 37-38, Ex. 5 – Depo. of Emde Excerpts, pp. 30-31, 33, Ex. 6 – Depo. of Kerr Excerpts, pp. 51-52.
[4] See Ex. 7 – Depo. of Nygaard Excerpts, pp. 114, 116-117, Ex. 10 – Depo. of Lubeck Excerpts, pp. 17-20, Ex. 11 – Depo. of Williams Excerpts, pp. 72-73, Ex. 12 – Depo. of Powers Excerpts,

Moreover, with regard to the entirety of Plaintiffs' claims in this lawsuit, all evidence demonstrates unequivocally that Sukarchi was a mere passive owner of Beach House who cannot be held liable for Defendant Beach House's alleged violations of the FLSA and SCWPA.[5] Sukarchi did not supervise Beach House's employees, did not exercise any operational authority over Beach House, and did not have any knowledge of Beach House's policies and procedures during the pertinent time period.[6]   Defendants thus bring this Motion for Summary Judgment, seeking judgment as a matter of law in favor of Defendants and against Plaintiffs with regard to: (1) Plaintiffs' claim that Beach House redistributed Plaintiffs' tips remitted into the Beach House tip pool to back of the house employees; and (2) the entirety of Plaintiffs' claims against Sukarchi.

## II.    FACTUAL BACKGROUND AND TESTIMONY

The parties have engaged in extensive written discovery in this case and have completed a total of sixteen (16) depositions.  Plaintiffs' counsel has taken the deposition of Beach House's General Manager, Steve Ghidella; the Rule 30(b)(6), FRCP, deposition of Beach House; and the depositions of Beach House managers Billy Cargill, Dave Goodbread, Scott Emde, and Tim Kerr. Defense counsel has deposed ten (10) of the Plaintiffs in this case: Holly Nygaard, Quanell Gee,

---

pp. 18-19, Ex. 13 – Depo. of Moss Excerpts, p. 15, Ex. 14 – Depo. of Marrone Excerpts, p. 23, Ex. 15 – Depo. of Byrd Excerpts, pp. 24-25, Ex. 16 – Depo. of Miller Excerpts, pp. 21-23.

[5] See Ex. 1 – 30(b)(6) Depo. of Beach House Excerpts, pp. 20-21, 34, 36, 39-40, Ex. 2 – Depo. of Ghidella Excerpts, pp. 51-53, 55, 133, 233-34, Ex. 3 - Depo. of Cargill Excerpts, pp. 36-37, 74-75, 85-86, 89, Ex. 4 – Depo. of Goodbread Excerpts, pp. 18, 67-68, 71-72, 77, 91, Ex. 5 – Depo. of Emde Excerpts, pp. 20, 27, 28, 45-46, 49, Ex. 7 – Depo. of Nygaard Excerpts, pp. 78-79, 120, Ex. 8 – Depo. of Gee Excerpts, pp. 46-47, Ex. 9 – Depo. of McColgan Excerpts, pp. 67-68, Ex. 10 – Depo. of Lubeck Excerpts, pp. 50-51, Ex. 11 – Depo. of Williams Excerpts, pp. 118-19, Ex. 12 – Depo. of Powers Excerpts, p. 39, Ex. 13 – Depo. of Moss Excerpts, p. 45, Ex. 14 – Depo. of Marrone Excerpts, p. 58, Ex. 15 – Depo. of Byrd Excerpts, pp. 53-54, Ex. 16 – Depo. of Miller Excerpts, pp. 60-61; see also Ex. 17 – Affidavit of Erez Sukarchi.

[6] See supra fn. 5.

Alexis McColgan, William Lubeck, Dave Williams, Amanda Powers, Aisha Moss, Madalynn Marrone, Meredith Byrd, and Victoria Miller.  All such deposition testimony has revealed:

- Beach House did not distribute tips from the Beach House tip pool to back of the house employees, as evidenced by testimony by Beach House, its General Manager, and its managers on duty during the relevant time period;[7]

- Plaintiffs have presented no admissible evidence demonstrating Beach House shared a portion of Plaintiffs' tips with employees who did not customarily or regularly receive tips;[8]

- Sukarchi did not exercise any authority over or supervise any of the Plaintiffs;[9]

- Sukarchi did not create any of the policies at issue in this lawsuit;[10] and

- Sukarchi did not have knowledge of the policies at issue in this lawsuit. (See supra fn. 10).

---

[7] See Ex. 2 – Depo. of Ghidella Excerpts, pp. 112-113, Ex. 3 – Depo. of Cargill Excerpts, pp. 29-30, 44, Ex. 4 – Depo. of Goodbread Excerpts, pp. 17, 37-38, Ex. 5 – Depo. of Emde Excerpts, p. 33, Ex. 6 – Depo. of Kerr Excerpts, p. 51-52.

[8] Ex. 7 – Depo. of Nygaard Excerpts, pp. 114, 116-117, Ex. 10 – Depo. of Lubeck Excerpts, pp. 17-20, Ex. 11 – Depo. of Williams Excerpts, pp. 72-73, Ex. 12 – Depo. of Powers Excerpts, pp. 18-19, Ex. 13 – Depo. of Moss Excerpts, p. 15, Ex. 14 – Depo. of Marrone Excerpts, p. 23, Ex. 15 – Depo. of Byrd Excerpts, pp. 24-25, Ex. 16 – Depo. of Miller Excerpts, pp. 21-23.

[9] Ex. 7 – Depo. of Nygaard Excerpts, pp. 78-79, 120, Ex. 8 – Depo. of Gee Excerpts, pp. 46-47, Ex. 9 – Depo. of McColgan Excerpts, pp. 67-68, Ex. 10 – Depo. of Lubeck Excerpts, pp. 50-51, Ex. 11 – Depo. of Williams Excerpts, pp. 118-19, Ex. 12 – Depo. of Powers Excerpts, p. 39, Ex. 13 – Depo. of Moss Excerpts, p. 45, Ex. 14 – Depo. of Marrone Excerpts, p. 58, Ex. 15 – Depo. of Byrd Excerpts, pp. 53-54, Ex. 16 – Depo. of Miller Excerpts, pp. 60-61; see also Ex. 17 – Affidavit of Erez Sukarchi.

[10] See Ex. 1 – 30(b)(6) Depo. of Beach House Excerpts, pp. 20-21, 34, 36, 39-40, Ex. 2 – Depo. of Ghidella Excerpts, pp. 51-52, 192, 193, 233-34, Ex. 3 - Depo. of Cargill Excerpts, pp. 74-75, 85-86, 89, Ex. 4 – Depo. of Goodbread Excerpts, pp. 18, 67-68, 71-72, 77, 90-91, Ex. 5 – Depo. of Emde Excerpts, pp. 20, 27, 28, 45-46, 49; see also Ex. 17 – Affidavit of Erez Sukarchi.

A.    **The Testimony In This Case Demonstrates Beach House Did Not Redistribute Tips From Beach House's Tip Pool To Back of the House Employees.**

All testimony in this case demonstrates Beach House did not redistribute tips from the Beach House tip pool to back of the house employees and Plaintiffs have presented no admissible evidence to the contrary.  Beach House's managers have each testified they did not redistribute any tip pool money to back of the house employees.  Likewise, Plaintiffs' testimony has demonstrated none of the Plaintiffs ever witnessed any tips being distributed to back of the house employees.  Rather, the only testimony provided by Plaintiffs regarding their ***belief and/or assumption*** that tips were redistributed to kitchen and janitorial staff arises from unsubstantiated rumors and hearsay from third parties, which is inadmissible as discussed hereunder.

1.    **Beach House's Managers' Testimony**

Steve Ghidella has been employed as the General Manager of Beach House since on or around 2008 or 2009.  (Ex. 2 – Depo. of Ghidella Excerpts, p. 45).  With regard to distribution of tips from the Beach House tip pool Mr. Ghidella has testified, as follows:

> Q:    So Beach House has a policy that requires its servers and bartenders to contribute…a portion of their tips to what's called a tip pool, correct?
> A:    Yes.
> Q:    And then out of that tip pool, Beach House pays whatever the servers and bartenders contributed to other individuals, correct?
> A:    Correct.
> Q:    ***Okay. The plaintiffs in the case allege that Beach House is paying it to kitchen employees and/or individuals who are functioning as a janitor, correct?***
> A:    ***That's what they're alleging, yes, but it's not true.***
> Q:    ***Okay. You deny that that's happened, correct?***
> A:    ***I know for [a] hundred percent fact, yes.***
> Q:    ***Okay. And that's because you handle the tip out. I mean, you handle the payment to the individuals.***
> A:    ***I disburse the money.***
> Q:    You disburse the money from the tip pool, correct?
> A:    Correct.

> Q:     So servers and bartenders contributed money into the tip pool; you're the one that disburses the money out of the tip pool. Correct?
> A:     That is correct.
> Q:     ***Since you became general manager at Beach House, has anyone else disbursed money from the tip pool?***
> A:     ***No.***

(Id. at pp. 111-113). (emphasis added).

Beach House's managers have likewise testified that tips contributed into Beach House's tip pool were not redistributed to back of the house employees.   Beach House manager, Billy Cargill, testified, as follows:

> Q:     As a manager at Beach House, what was your understanding of where the tip-out was distributed?
> A:     Barbacks, food runners.
> Q:     Anyone else?
> A:     No.

(Ex. 3 – Depo. of Cargill Excerpts, p. 44).  Beach House manager, Dave Goodbread, testified that his understanding of the tip pool was that the tip out went to "food runners and bussers that are cleaning the restaurant for you [and] running the food to your tables." (Ex. 4 – Depo. of Goodbread Excerpts, p. 17).  Mr. Goodbread also testified that when servers and bartenders complained about the tip out amount being too high, he asked them if they wanted to come back and clean because ***the bussers*** who are receiving tips from the tip pool are the employees who are cleaning up after servers' and bartenders' customers, doing job duties such as "sweeping up at the end of the night[,]" "wiping down tables[,]" and "wiping down chairs."  (Id. at pp. 37-38) (emphasis added).

Beach House manager Scott Emde testified that Beach House limited redistribution of tips from the Beach House tip pool to "food runners and bussers." (Ex. 5 – Depo. of Emde Excerpts, p. 33).  Similarly, Beach House manager, Tim Kerr, testified, as follows:

> Q:     Okay. The cash from the tip-out…that's going into the zippered bag?

A:    Yes.

Q:    Did you ever take any of the cash that either was supposed to go into the zippered bag or after it had gone into the zippered bag, do you take any for yourself?

A:    No, sir.

Q:    ***Did you ever take any of that cash in the zippered bag, either from the servers or bartenders, and give it to any cook, dishwasher or person that cleans the restaurant.***

A:    ***I did not, no.***

Q:    Okay. What is your understanding of the money that – what happened to it in the zippered bag?

A:    Can you elaborate?

Q:    Sure. The zippered bag at the end of each cash-out went into the drawer in the manager's desk?

A:    Yes.

Q:    What eventually happened to that cash?

A:    It would be pooled until Monday morning, where Steve [Ghidella] would come in and he would use the Excel spreadsheet to break it down per hours.

Q:    ***And it would be distributed to whom?***

A:    ***It would be distributed to the bartenders and the food runners, which are the front of the house helpers.***

(Ex. 6 – Depo. of Kerr Excerpts, p. 51-52) (emphasis added).  In sum, the Beach House managers who collected tips for the Beach House tip pool all testified that tips were not shared with back of the house employees.  Additionally, Mr. Ghidella, who was the only individual to disburse monies from the tip pool during the time period relevant to this case, testified he did not distribute tip pool monies to back of the house employees.

    **2.**    **Plaintiffs' Testimony**

Plaintiffs' testimony demonstrates there is no admissible evidence in this case that Beach House redistributed tips Plaintiffs contributed to the Beach House tip pool to back of the house employees.  Although Plaintiff Nygaard testified she was told by a few employees that tips were shared with back of the house employees, Plaintiff Nygaard testified that she did not personally witness anyone give money out of the tip pool to someone in the back of the house.  (Ex. 7 – Depo. of Nygaard Excerpts, pp. 82-86, 114-117).  Likewise, Plaintiff Gee testified he was told by other

Beach House employees that tips were being given to the kitchen; however, he never personally witnessed money being given to the kitchen staff and no kitchen employee ever told Plaintiff Gee he/she received tips. (Ex. 8 – Depo. of Gee Excerpts, pp. 25-32). Plaintiff Gee thus admitted the only thing he knew about tip redistribution was what was said by third parties, and Plaintiff Gee did not know one way or the other whether tips were actually given to back of the house employees. (Id. at p. 32).

Plaintiff Alexis McColgan testified she believed tip money was given to back of the house employees due to talk amongst Beach House employees; however, she did not personally witness such practice occurring. (Ex. 9 – Depo. of McColgan Excerpts, pp. 21-30). Plaintiff William Lubeck provided the following similar testimony:

Q:    ***Let's talk about the kitchen. Did you ever personally witness any tips being paid to kitchen staff?***

A:    ***As in physically see them, no.***

Q:    Did any member of the kitchen staff ever tell you that they received tips?

A:    No.

Q:    Did any member of management ever tell you that the kitchen was to receive tips?

A:    No.

Q:    So then who told you that?

A:    Just servers, bartenders that have been there for a while. I remember Holly Nygaard I think was maybe the one that I've heard that from.

Q:    Has anybody other than Holly Nygaard told you that people in the kitchen were receiving tip money?

A:    I can't recall anybody specific. That's just – ***it was kind of a thing that kind of just went around there***.

...

Q:    But other than what Holly [Nygaard] said and other than what a couple of other people in passing may have said, you don't personally know whether or not some of the money that you were putting into the tip pool was actually going to the kitchen?

A:    I never saw them hand them money, so –

Q:    ***So do you have any other knowledge about – knowledge being things that you know that you've not yet***

> ***communicated to me, or are you aware of any other***
> ***evidence of Beach House paying their kitchen tips?***
> A:    ***I don't have any evidence.***

(Ex. 10 – Depo. of Lubeck Excerpts, pp. 17-20) (emphasis added).   Plaintiff Dave Williams

testified that there was a circulating rumor that tips went to the kitchen; however, Plaintiff Williams

did not have any evidence that it actually happened and has never seen tip money given to anyone

that worked in the Beach House kitchen.  (See Ex. 11 – Depo. of Williams Excerpts, pp. 72-73).

Although, Plaintiff Amanda Powers testified she was told by two Beach House employees

that tips were being redistributed to the kitchen, Plaintiff Powers stated she did not know which

employees received tips from the Beach House tip pool; she never saw tips from the tip pool being

distributed to kitchen staff; and the only employees she ever witnessed being handed tips from the

tip pool were bartenders and food runners.  (See Ex. 12 – Depo. of Powers, pp. 18-21).  When

questioned regarding redistribution of tips from the Beach House tip pool, Plaintiff Aisha Moss

testified, as follows:

> Q:    [D]o you know who was on the other end receiving the tips
> that you placed into the tip pool?
> A:    As far as I was informed, it was food runner and host, I
> believe.
> Q:    ***Did you ever personally observe any instances where the***
> ***tips that you gave to a manager for the tip out were given***
> ***to anyone other than the food runners or the hostesses?***
> A:    ***No.***

(Ex. 13 – Depo. of Moss Excerpts, p. 15) (emphasis added).

Like several other Plaintiffs, Plaintiff Byrd testified she believed tips were distributed to

the kitchen based on what she was told by third parties; however, Plaintiff Byrd never personally

observed any tips being given to a kitchen staff member.  (Ex. 15 – Depo. of Byrd Excerpts, pp.

24-25).  Plaintiff Madalynn Marrone testified her understanding of the tip pool was that tips were

redistributed to bartenders, busboys, and barbacks; and Plaintiff Marrone never witnessed tips

being handed to anyone.  (Ex. 14 – Depo. of Marrone Excerpts, p. 23).  Plaintiff Victoria Miller testified as far as she was aware, tips were being redistributed to bartenders and barbacks; she never personally observed tips being given out after she remitted them to the Beach House manager for the tip pool; and she does not have proof tips were given to anyone other than front of the house employees.  (See Ex. 16 – Depo. of Miller Excerpts, pp. 21-22).

In sum, the testimony in this case demonstrates none of the Plaintiffs in this lawsuit ever personally observed tips from the Beach House tip pool ever being shared with back of the house employees.  Rather, Plaintiffs have relied upon hearsay and circulating rumors to conclude, without any firsthand knowledge or evidence, that tips were redistributed in such a manner.[11] Moreover, the managers who actually handled collection of tips for the Beach House tip pool and Mr. Ghidella, who is the sole individual who handled distribution of tips from the Beach House tip pool, have all testified that tips were never shared with back of the house employees.

**B.** **There Is No Evidence Sukarchi Exercised Any Authority Over Beach House's Operations or Plaintiffs' Employment or Created or Had Any Knowledge of Any of the Policies at Issue In This Lawsuit.**

All testimony in this case demonstrates Sukarchi was only a passive owner of Beach House, who neither exercised operational control over Beach House or Plaintiffs' employment, nor had any involvement in or knowledge of Beach House's policies that are at issue in this lawsuit.

**1.** **Sukarchi's Testimony**

On February 8, 2022, Sukarchi executed an Affidavit, wherein he testified he owned a fifty percent (50%) membership interest in Beach House.  (See Ex. 17 – Affidavit of Sukarchi, p. 1, para. 2).  Sukarchi testified he is only a member of Beach House, who is not designated as a manager or managing member of Beach House.  (Id. at p. 1, para. 3).  Sukarchi testified he is a

---

[11] The inadmissibility of such evidence will be discussed in detail in Section IV(A) hereunder.

passive owner of Beach House, who does not exercise any authority over Beach House's operations or management. (Id. at p. 1, para. 4). Sukarchi testified Mr. Ghidella has full and complete authority over all aspects of Beach House's operations. (Id. at p. 2, para. 6). Sukarchi testified: he has not exercised any authority over or supervised any of the Plaintiffs in this lawsuit; he did not create or approve any of Beach House's policies and/or procedures at issue in this lawsuit; and he did not know of the existence of any of Beach House's policies and/or procedures at issue in this lawsuit during the time period relevant to this lawsuit. (Id. at p. 2, paras. 7-9).

2.    **Beach House's Managers' Testimony**

Testimony from Mr. Ghidella, both as Beach House's Rule 30(b)(6), FRCP, representative, and in his individual capacity as Beach House's General Manager, also makes clear that Sukarchi is only a passive owner of Beach House, who does not exercise any operational control or have any knowledge regarding Beach House's policies and procedures. In Mr. Ghidella's individual deposition, Mr. Ghidella testified:

> Q:    Okay. So since being named by Sukarchi as general manager, is he the person that you report to for Beach House?
> A:    Sukarchi?
> Q:    Yes.
> A:    As far as reporting what?
> Q:    Okay. You're the general manager at Beach House, right?
> A:    Yeah.
> Q:    Would you agree that you're the top employee at Beach House, correct?
> A:    Yes.
> Q:    Everybody at Beach House eventually reports to you?
> A:    Correct.
> Q:    Correct?
> A:    Yeah.
> Q:    To whom do you report?
> A:    That's what I was asking, like what – what specific thing would I report? That's where I'm not getting.
> Q:    All right. ***Do you answer to anyone?***

> A: ***No. Everything just goes, like, to me and I'm the final say-so. That's why I think I'm a little confused.***
> Q: ***Okay. All right. Then you're the final say-so for Beach House. You don't report to anyone else about the activities, simply the profit or loss?***
> A: ***Correct, yeah, and not even that most of the time.***
>
> …
>
> Q: You have no limitations on your authority other than selling the business, I guess?
> A: Correct, yeah.
>
> …
>
> Q: Okay. ***Do you ever take any direction from Sukarchi?***
> A: ***No.***
>
> …
>
> Q: Did Erez Sukarchi or any other member of Beach House Hospitality Group, LLC ever ask or instruct you to either create, prepare, or enforce the walkout policy, the wrong order policy, or the silverware policies we've discussed?
> A: ***They don't even have any knowledge of it.***
> Q: Has Erez Sukarchi or any other member of the Beach House Hospitality Group, LLC ever instructed or asked you to pay out any cash from the tips received within the Beach House tip pool and pay that cash to any janitorial or kitchen work for Beach House?
> A: ***No, never.***

(Ex. 2 – Depo. of Ghidella Excerpts, pp. 51-53, 55, 133, 233-34) (emphasis added).

During Beach House's Rule 30(b)(6) deposition, Mr. Ghidella testified, in pertinent part, as follows:

> Q: From the time that you became general manager up until the time period [relevant to this lawsuit] started, January of 2017, what was the direction or goals from Sukarchi to you?
> A: ***Direction and goals from Sukarchi to me. I don't think there was any.***
> Q: Okay. As general manager of Beach House, would you say that your number one goal in being general manager would be to increase the net profit?
> A: Yes.
> Q: Did Sukarchi ever at any point, from the time you became general manager until January of 2017, tell you that you needed to increase the net profit more?
> A: No.

> Q:    After January 2017, has he ever said anything about increasing the net profit?
>
> A:    No, he had never.

(Ex. 1 – 30(b)(6) Depo. of Beach House Excerpts, pp. 20-21).

In the Rule 30(b)(6) deposition of Beach House, Mr. Ghidella similarly confirmed he never discussed requiring servers and/or bartenders to pay for walkouts, wrong orders, or silverware with Sukarchi.  (See Ex. 1 – 30(b)(6) Depo. of Beach House Excerpts, pp. 34, 36, 39-40).

During his deposition, Beach House manager Billy Cargill identified Sukarchi as the owner of Beach House; however, identified Mr. Ghidella as the General Manager of Beach House to whom he reported. (Ex. 3 – Depo. of Cargill Excerpts, pp. 36-37).  Like Mr. Ghidella, Mr. Cargill confirmed he never discussed requiring servers and/or bartenders to pay for walkouts, wrong orders, or silverware with Sukarchi.  (See Id. at pp. 74-75, 85-86, 89).

Beach House manager Dave Goodbread testified that, during his time as a manager at Beach House, he never had any conversations with Sukarchi about Beach House's operations.  (Ex. 4 – Depo. of Goodbread Excerpts, p. 18).  Mr. Goodbread was never supervised by Sukarchi.  (Id. at p. 91).  Mr. Goodbread also confirmed he never discussed requiring servers and/or bartenders to pay for walkouts, wrong orders, or silverware with Sukarchi; and that it was Mr. Goodbread who created the silverware policy.  (See Id. at pp. 67-68, 71-72, 77).

Beach House manager Scott Emde testified that Sukarchi was never involved in Beach House's management operations.  (Ex. 5 – Depo. of Emde Excerpts, p. 20).  Mr. Emde also confirmed he never discussed requiring servers and/or bartenders to pay for walkouts, wrong orders, or silverware with Sukarchi.  (Id. at pp. 45-46, 49, 54).  Although the Beach House managers did email, amongst themselves, Ghidella, and Sukarchi, a nightly report of Beach House's sales, the testimony in this case indicates Sukarchi never asked for such report, did not

reply to any of the nightly emails, and did not instruct anyone to increase revenues or decrease costs. (See Ex. 1 – 30(b)(6) Depo. of Beach House, pp. 24-25 Ex. 4 – Depo. of Goodbread Excerpts, p. 91, Ex. 5 – Depo. of Emde Excerpts, pp. 27-28).

3.    **Plaintiffs' Testimony**

All testimony given by Plaintiffs in this matter likewise indicates Sukarchi did not exercise operational control or supervise Plaintiffs. All ten (10) of the Plaintiffs who have been deposed in this case testified Sukarchi did not supervise them. (See Ex. 7 – Depo. of Nygaard Excerpts, pp. 78-79, Ex. 8 – Depo. of Gee, pp. 46-47, Ex. 9 – Depo. of McColgan Excerpts, p. 67, Ex. 10 – Depo. of Lubeck Excerpts, pp. 50-51, Ex. 11 – Depo. of Williams Excerpts, pp. 118-119, Ex. 12 – Depo. of Powers Excerpts, p. 39, Ex. 13 – Depo. of Moss Excerpts, p. 45, Ex. 14 – Depo. of Marrone, p. 58, Ex. 15 – Depo. of Byrd Excerpts, pp. 53-54, Ex. 16 – Depo. of Miller Excerpts, p. 60). For example, Plaintiff Nygaard testified, in pertinent part, as follows:

> Q:    Did you ever have any direct interaction with Erez Sukarchi during your employment?
> A:    …I did, but it was never as a boss/employee relationship. It was just when he would come in there to eat or take his friends out or girlfriends or whatever.
> Q:    Got you. So you –
> A:    It was a serving situation.
> Q:    ***You knew Erez Sukarchi as a customer as opposed to as a supervisor or a boss?***
> A:    ***Correct.***
> Q:    To your knowledge, did Erez Sukarchi ever supervise you during your employment?
> A:    No.
> Q:    ***Did he ever – to the best of your knowledge, Ms. Nygaard, what involvement, if any did Erez Sukarchi have in the restaurant, other than being a part owner?***
> A:    ***That's pretty much it.*** He's got all the money now, so he doesn't have to do anything.
> Q:    During your employment, are you aware of any involvement that he had in the restaurant, aside from being an owner?
> A:    ***No.***
>
> …

> Q:    Do you know whether Erez Sukarchi created any of the payment practices or payment polices at Beach House?
> A:    I do not know. I do not know.

(Ex. 7 – Depo. of Nygaard Excerpts, pp. 78-79, 120) (emphasis added).  Plaintiff Gee testified about his knowledge of Sukarchi, as follows:

> Q:    Did Erez Sukarchi supervise you while you were employed at Beach House?
> A:    No.
> Q:    Did Erez Sukarchi ever direct your employment while you were employed at Beach House?
> A:    No. And I don't know Erez's last name, so we are talking about the owner of Beach House, correct?
> Q:    That's correct, one of the owners of Beach House.
> A:    Yes, yes.
> Q:    Have you ever communicated with Erez Sukarchi?
> A:    Small talk.
> Q:    Just on a personal level, not on an employment level?
> A:    Yeah.
> Q:    Did Billy [Cargill] or Dave [Goodbread] or Scott [Emde] ever tell you that Erez Sukarchi told them to collect any of these payments [i.e., for walkouts, wrong orders, or silverware]?
> A:    I don't recollect that. I don't remember anything like that.

(Ex. 8 – Depo. of Gee Excerpts, pp. 46-47).  Plaintiff McColgan and Plaintiff Lubeck testified they never even met Sukarchi, much less communicated with him.  (See Ex. 9 – Depo. of McColgan Excerpts, pp. 67-68, Ex. 10 – Depo. of Lubeck Excerpts, pp. 50-51).

Plaintiff Williams testified similarly, as follows:

> Q:    Do you know who Erez Sukarchi is?
> A:    I don't know him personally, but I know who he is.
> Q:    Did Erez Sukarchi ever direct you or ever manage you at the restaurant?
> A:    No, no.
> Q:    To your knowledge, did Erez Sukarchi play any part in the tip-out procedure at the end of the night?
> A:    I would not know. I know his involvement was owner of some sort, but I don't know much about it.

> Q:    Just to kind of sum it all up, do you have any knowledge of Erez Sukarchi participating in any of the practices complained of in this lawsuit?
>
> A:    What I'll say is the only thing I know about Erez is that his name is Erez, and I couldn't even tell you that's a fact because it could just be made up. That's all I know of Erez. A name he goes by, we'll call him Erez, that's the extent of my knowledge that I know about him.

(Ex. 11 – Depo. of Williams Excerpts, pp. 118-119).  Plaintiff Powers testified Sukarchi was a customer she waited on; however, she was never supervised by Sukarchi and never observed him supervising anyone at Beach House during her employment.  (Ex. 12 – Depo. of Powers Excerpts, p. 39).  Plaintiff Moss testified she waited on Sukarchi one time; Sukarchi never supervised her; she never observed Sukarchi supervising anyone else at Beach House during her employment; and she had no knowledge of Sukarchi creating any of Beach House's policies.  (Ex. 13 – Depo. of Moss Excerpts, p. 45).

Plaintiff Marrone testified with regard to Sukarchi, as follows:

> Q:    Did you ever have any direct interactions with Erez Sukarchi when you worked for Beach House?
>
> A:    No.
>
> Q:    Do you know who Erez Sukarchi is?
>
> A:    I know his name. But if I saw him, I don't think I would recognize him.
>
> Q:    So is it fair to say he never supervised you while you worked at Beach House?
>
> A:    That's correct. That's fair to say.

(Ex. 14 – Depo. of Marrone Excerpts, p. 58).  Plaintiff Byrd proffered similar testimony, stating that she did not recall having any interactions with Sukarchi when she worked with Beach House; Sukarchi never supervised her; and she had no knowledge of him creating any Beach House policies.  (Ex. 15 – Depo. of Byrd Excerpts, pp. 53-54).  Echoing several of the other Plaintiffs' experiences with Sukarchi, Plaintiff Byrd testified, "I know that one of the owners, or, like, owner, one of the family members, I don't know if it was [Sukarchi], would come and eat sometimes.  But

that's pretty much it. I never spoke to them." (Id. at p. 53).  Finally, Plaintiff Miller testified that

she never had any direct interactions with Sukarchi and did not know whether he had created Beach

House's policies.  (See Ex. 16 – Depo. of Miller Excerpts, p. 60).

In sum, all testimony from Beach House's managers demonstrates Sukarchi never directed

management or engaged in any operations of Beach House during the pertinent time period.

Likewise, all testimony from Plaintiffs in this case demonstrates that Sukarchi had no involvement

with Plaintiffs, and, at most, some Plaintiffs knew of Sukarchi only as an occasional customer of

Beach House, rather than an employer directly involved with Beach House's operations.

Therefore, all deposition testimony in this case clearly and unequivocally demonstrates Sukarchi

**_never exercised any operational control_** over Beach House or Plaintiffs' employment, and thus,

that Sukarchi did not **_knowingly_** permit Beach House to violate any employment laws.

### III.    STANDARD OF REVIEW

Summary judgment should be granted when a party demonstrates there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  FED.

R. CIV. P. 56(a).  The party moving for summary judgment has the initial burden to demonstrate

to the court that there are no genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986).  However, once the moving party has made this threshold demonstration, the

non-moving party may not rest on the allegations averred in its pleadings. Id. at 324.  Rather, the

non-moving party must demonstrate that specific, material facts exist that give rise to a genuine

issue in order to survive the summary judgment motion.  Id.; see also FED. R. CIV. P. 56(e).  The

non-moving party must present "more than a mere 'scintilla of evidence' that a genuine dispute of

material fact exists…or that there is 'some metaphysical doubt' as to material facts."  Auto Owners

Ins. Co. v. Personal Touch Med. Spa, LLC, 763 F.Supp.2d 769, 776-77 (D.S.C. 2011) (internal

citations omitted). Conclusory allegations or denials, without more, are insufficient to preclude granting a summary judgment motion. See Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

## IV.    LEGAL ARGUMENT

Defendants respectfully request this Court enter judgment as a matter of law in favor of Defendants and against Plaintiff on: (1) all claims Plaintiffs allege with regard to Defendants' alleged redistribution of tips from the Beach House tip pool to employees who did not customarily and regularly receive tips; and (2) all claims Plaintiffs allege against Sukarchi.

In their Third Amended Complaint, Plaintiffs allege Defendants had policies whereby Defendants redistributed tips Plaintiffs contributed into the Beach House tip pool to: (a) employees who did not customarily and regularly receive tips; and (b) to Defendants for: silverware Defendants claimed Plaintiffs had thrown away ("Silverware Charges"), for guests who left the restaurant without paying for their food or drinks ("Walkout Charges"), and for any orders of food or drinks that the restaurant guests told Plaintiffs that they did not want or for any mistakes in entering the orders by Plaintiffs ("Wrong Order Charges"). (ECF No. 57, pp. 5-6, para. 25). Plaintiffs claim the aforementioned tip redistribution to back of the house employees, Silverware Charges, Walkout Charges, and Wrong Order Charges violated the FLSA (Plaintiffs' First Cause of Action) and the SCPWA (Plaintiffs' Third Cause of Action). (Id. at pp. 6-8, 9-10, paras. 37-42, 48-59). Therefore, Defendants' Motion for Partial Summary Judgment seeks this Court grant judgment as a matter of law in favor of Defendants and against Plaintiffs solely on Plaintiffs' allegations concerning improper tip redistribution to back of the house employees, and that such claims be stricken from Plaintiffs' Third Amended Complaint accordingly. (See ECF No. 57, pp. 5, 7, 10 paras. 12, 25(A), 35, 56). Defendants' Motion for Partial Summary Judgment further

seeks this Court grant judgment as a matter of law in favor of Defendants and against Plaintiffs on all allegations against Sukarchi, and that Sukarchi thus be dismissed from this case accordingly. Therefore, if Defendants' Motion for Partial Summary Judgment is granted, Plaintiffs' claims against Beach House for violation of the FLSA and SCWPA for Silverware Charges, Walkout Charges, and Wrong Order Charges would remain pending in this case for trial.

Defendants' Motion for Partial Summary Judgment should be granted because all undisputed, material facts in this case demonstrate: (1) Defendants did not redistribute any tips contributed by Plaintiffs into the Beach House tip pool to employees who did not customarily and regularly receive tips; and; (2) there is neither evidence that Sukarchi exercised any operational control over Beach House or Plaintiffs' employment, nor that Sukarchi knowingly permitted Beach House to violate the South Carolina Payment of Wages Act.

**A.    A Summary Judgment Should Be Granted to Defendants on Plaintiffs' Claim that Defendants Violated Section 203(m) of the FLSA because Defendants Did Not Redistribute Tips From the Beach House Tip Pool to Back of the House Employees and Plaintiffs' Have Proffered No Admissible Evidence To the Contrary.**

All testimony in this case demonstrates: (1) Beach House's management **_only_** distributed tips from the Beach House tip pool to front of the house employees; and (2) none of the Plaintiffs **_personally observed_** tips they contributed to the Beach House tip pool being redistributed to any Beach House back of the house employee.  (See supra Section II(A), pp. 6-11).  It is thus abundantly clear that Plaintiffs' allegations against Defendants regarding improper tip sharing with back of the house employees are based solely upon inadmissible hearsay from third parties.  As a result, summary judgment should be granted in favor of Defendants and against Plaintiff with regard to Plaintiffs' improper tip sharing claim.

The FLSA is understood to be a minimum wage/maximum hour law, which generally requires, subject to various exceptions, employers to pay their employees a minimum wage of

$7.25 per hour for all hours worked and overtime for all hours worked in excess of forty hours per week. Tom v. Hospitality Ventures LLC, 980 F.3d 1027, 1032 (4th Cir. 2020) (internal citations omitted). One of the exceptions to the FLSA's $7.25 per hour minimum wage requirement concerns tipped employees. See Id. at 1032-33. The FLSA defines a "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). The FLSA allows employers to pay those employees who fall under the FLSA's definition of a "tipped employee," a reduced cash wage of $2.13 per hour and 'take a tip credit against the minimum wage by using an employees' [sic] tips as wages.'" Tom, 980 F.3d at 1033 (citing Trejo v. Ryman Hosp. Props., Inc. 795 F.3d 442, 447 (4th Cir. 2015)). Therefore, for an employee making $2.13 per hour, the employer can utilize a tip credit of $5.12 to meet its minimum wage obligations under the FLSA. Tom, 980 F.3d at 1033.

If an employer chooses to pay its tipped employees a reduced wage by utilizing the tip credit provision of the FLSA, the employer must allow such tipped employees to retain all tips they receive. 29 U.S.C. § 203(m)(2). However, the FLSA provides that such requirement "shall not prohibit the pooling of tips among employees who customarily and regularly receive tips." Id.

Here, Plaintiffs allege that Beach House's tip pool was improper because Defendants shared tips Plaintiffs contributed into the Beach House tip pool with kitchen and/or janitorial staff (i.e., back of the house employees who are employees who do not customarily and regularly receive tips). Plaintiffs allege the foregoing renders Defendants ineligible to utilize the FLSA's tip credit provision, and Defendants thus are required to pay Plaintiffs the Wage Gap and return the tips Plaintiffs contributed into the Beach House tip pool to Plaintiffs. Nonetheless, what is fatal to Plaintiffs' improper tip sharing claim is that ***Plaintiffs have not demonstrated Defendants redistributed any tips from the Beach House tip pool to back of the house employees***.

First, all of Beach House's managers have testified tips from the Beach House tip pool were only redistributed to front of the house helpers such as bussers, food runners, and barbacks. (See supra Section II(A)(1), pp. 5-8). Beach House's General Manager, Mr. Ghidella, has been the sole Beach House employee to disburse tips from the Beach House tip pool since at least as far back as 2009 – well before the time period pertinent to this case. (Ex. 2 – Depo. of Ghidella Excerpts, p. 45, 111-113). Mr. Ghidella testified, with one-hundred percent certainty, that Plaintiffs' allegations were false and he has not distributed tips from the Beach House tip pool to any back of the house employees. (Id.).

Second, every Plaintiff in this case who has proffered testimony, testified he or she has ***never personally observed*** tips from the Beach House tip pool being redistributed to any back of the house employee. (See supra Section II(A)(2), pp. 8-10). Plaintiffs Lubeck, Williams, and Miller each expressly admitted they had no evidence that improper tip sharing occurred. (See Ex. 10 – Depo. of Lubeck Excerpts, pp. 17-20, Ex. 11 – Depo. of Williams Excerpts, pp. 72-73, Ex. 16 – Depo. of Miller Excerpts, pp. 21-22). The remaining Plaintiffs testified their belief that tips were shared with back of the house employees stemmed from circulating rumors, assumptions they made, or things they were told by third parties. (See supra Section II(A)(2), pp. 8-10).

Therefore, the ***only*** testimony Plaintiffs have proffered in this case to support their improper tip sharing claim is inadmissible hearsay. Plaintiffs' testimony makes it exceedingly clear that, during the time period relevant to this lawsuit, rumors circulated throughout Beach House staff that tips were shared with kitchen and janitorial staff.[12] Many of the Plaintiffs testified

---

[12] (Ex. 9 – Depo. of McColgan Excerpts, pp. 22-23 (when asked about what her belief tips were being shared with the kitchen was based upon, Plaintiff McColgan testified, "There was a lot of talk at Beach House amongst people that had been there, who were also servers, who had been there for a very long time."), Ex. 10 – Depo. of Lubeck Excerpts, pp. 17-18 ("[I]t was just kind of a thing that kind of just went around there."), Ex. 11 – Depo. of Williams Excerpts, p. 72 ("That

they believe and/or assume tips from the Beach House tip pool were shared with kitchen and/or janitorial staff because of things they were told by third party Beach House employees (<u>See</u> Ex. 7 – Depo. of Nygaard Excerpts, pp. 82-86, 114-117, Ex. 8 – Depo. of Gee Excerpts, pp. 25-32, Ex. 9 – Depo. of McColgan Excerpts, pp. 21-30, Ex. 13 - Depo. of Powers Excerpts, pp. 18-21, Ex. 14 - Depo. of Marrone Excerpts, p. 27, Ex. 15 – Depo. of Byrd Excerpts, pp. 22-25, Depo. of Miller Excerpts, pp. 22-27).  However, this evidence is inadmissible and improper for consideration on summary judgment.

Pursuant to Rule 56(c)(1)(A), <u>FRCP</u>, a party asserting a fact is genuinely disputed for purposes of summary judgment must support the assertion by citing to particular parts of materials in the record, including depositions, documents…affidavits or declarations, stipulations, or other materials.  However, to become a part of the summary judgment record, the materials must be presented in the form admissible into evidence at trial.  <u>See</u> F<small>ED</small>. R. C<small>IV</small>. P. 56(c) and (e).  Hearsay, unattributed rumors, and similar testimony in affidavits and depositions is neither admissible at trial, nor supportive of an opposition to a motion for summary judgment.  <u>Greensboro Professional Fire Fighters Ass'n, Local 3157 v. City of Greensboro</u>, 64 F.3d 962, 967 (4th Cir. 1995) (citing F<small>ED</small>. R. C<small>IV</small>. P. 56(e)); <u>see also</u> <u>Maryland Highways Contractors Ass'n v. Maryland</u>, 933 F.2d 1246, 1251 (4th Cir. 1991) (holding hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment) (internal citations omitted).  "The summary judgment inquiry thus scrutinizes a plaintiff's case to determine whether the plaintiff has proffered sufficient proof, ***in the form of admissible evidence***, that could carry the burden of proof of his

---

was a circulating thing [i.e., tip money being redistributed to the kitchen], but I can't tell you who exactly said that to me."), Ex. 16 – Depo. of Miller, pp. 22-23 (testifying that tips being shared with the kitchen it was a rumor that went around during her time at Beach House).

claim at trial." Mitchell v. Data General Corp. 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added).

Here, the **_only_** testimony Plaintiffs have proffered to support their claim that Beach House shared tips from the Beach House tip pool with back of the house employees is Plaintiffs' testimony that third parties told them Beach House did so and/or that Plaintiffs believed rumors from third parties that such a practice occurred. (See Ex. 7 – Depo. of Nygaard Excerpts, pp. 82-86, 114-117, Ex. 8 – Depo. of Gee Excerpts, pp. 25-32, Ex. 9 – Depo. of McColgan Excerpts, pp. 21-30, Ex. 12 - Depo. of Powers Excerpts, pp. 18-21, Ex. 14 - Depo. of Marrone Excerpts, p. 27, Ex. 15 – Depo. of Byrd Excerpts, pp. 22-25). The aforementioned testimony is clearly inadmissible hearsay, as Plaintiffs are offering statements of third parties in order to prove the truth of such statements, i.e., that tips were shared with back of the house employees. See FED. R. EVID. 801 and 802. Accordingly, such testimony should **_not_** be considered by this court on summary judgment.

In light of the above, it is also important to note the following: Plaintiff Nygaard testified another Beach House employee, Krystal Martel, told Plaintiff Nygaard tips were being redistributed to back of the house employees. (See Ex. 7 – Depo. of Nygaard Excerpts, pp. 81-82). However, Krystal Martel has executed a sworn Affidavit, wherein Ms. Martel testifies she never told Plaintiff Nygaard tips were being redistributed to the kitchen staff or managers during the time period relevant to this case. (See Ex. 18 – Affidavit of Martel, p. 2, para. 8). Within her Affidavit, Ms. Martel also testifies: she has no knowledge of any policy or practice during the time period relevant to this case by which a server's or a bartender's tips were either directly or indirectly shared with any individual other than front-of-the-house employees, such as food runners, bussers, bartenders, and barbacks; and, at no point during the time period relevant to this

case, did Ms. Martel witness or hear of any employee of Beach House distributing tips to any individual employed or contracted to work in the kitchen, as janitorial staff, as a supervisor, or as a manager. (See Id. at pp. 1, 2, paras. 5-7). Such testimony by Ms. Martel demonstrates exactly why hearsay evidence, i.e., testimony from Plaintiffs alleging a ***third party*** told them tips were distributed to back of the house employees, is unreliable, inadmissible, and should not be considered by the court.

Based upon the foregoing, all admissible testimony demonstrates there is no evidence in this case that tips Plaintiffs contributed into the Beach House tip pool were redistributed to back of the house employees. The remaining evidence Plaintiffs have proffered is inadmissible and unsubstantiated hearsay. Therefore, Plaintiffs have failed to establish valid claims against Defendants based upon improper tip sharing from the Beach House tip pool. Defendant's Motion for Partial Summary Judgment should be granted in favor of Defendants with regard to such claims and all allegations within Plaintiffs' Third Amended Complaint concerning improper tip sharing with back of the house employees should be stricken accordingly.[13]

**B.**    **A Summary Judgment Should be Granted on Plaintiffs' Claim that Defendant Sukarchi violated the FLSA because All Evidence In This Case Demonstrates Sukarchi Exercises No Operational Control Over Beach House and Did Not Knowingly Permit Beach House to Violate the South Carolina Payment of Wages Act.**

All testimony in this case clearly and unequivocally demonstrates Sukarchi was, at most, a passive owner of Beach House, who did not exercise any operational control over Beach House's operations or Plaintiffs' employment and did not knowingly permit Beach House to violate the South Carolina Payment of Wages Act. As a result, this Court should grant summary judgment in favor of Defendants and against Plaintiffs with regard to all claims against Sukarchi, individually.

---

[13] Plaintiffs' claims regarding improper tip distribution are found in Plaintiffs' Third Amended Complaint, ECF No. 57, pages 5, 7, 10, paras. 12, 25(A), 35, 56.

1.    **Plaintiffs' Claims Against Sukarchi, Individually, Under the FLSA Should Be Dismissed.**

The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee…"  29 U.S.C. § 203(d).  "The FLSA conditions liability on the existence of an employer-employee relationship, and the employee bears the burden of alleging and proving the existence of that relationship."  Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016) (internal citations omitted).  ***The Fourth Circuit has held that "employers" include individuals with managerial responsibilities and those with substantial control over the terms and conditions of employees' work***.  Id. (internal citations omitted) (emphasis added).  Federal courts apply the "economic reality" test to determine whether an individual is an employer or employee under the FLSA.  Id.  The economic reality test contemplates four factors: "'whether the alleged employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.'"  Id. (internal citations omitted).  Courts analyze the economic realities test by considering the totality of the circumstances, with no one single factor being dispositive.  Id.

The totality of the circumstances in this case warrants a finding that Sukarchi is not an "employer" under the FLSA.  All testimony in this case indicates that Sukarchi exercised ***no operational control*** over Plaintiffs in this case.  (See supra Section II(B), pp. 11-17).  Each of the Plaintiffs admitted Sukarchi never supervised them.  (See supra fn. 7).  Many of the Plaintiffs only knew of Sukarchi as an occasional customer of Beach House.  (See Ex. 7 – Depo. of Nygaard Excerpts, p. 78, Ex. 8 – Depo. of Gee Excerpts, pp. 46-47, Ex. 12 – Depo. of Powers Excerpts, p. 39, Ex. 13 – Depo. of Moss Excerpts, p. 45, Ex. 15 – Depo. of Byrd Excerpts, p. 53).  No Plaintiff proffered testimony that Sukarchi hired or fired any of the Plaintiffs, made their schedules,

determined their pay, or maintained employment records. (<u>See</u> <u>supra</u> fn. 9). Therefore, even if Sukarchi had the authority, as a part owner of Beach House, to do any of the above, Plaintiffs have proffered no proof Sukarchi ever exercised such authority with regard to any of the Plaintiffs in this case. Plaintiffs have not demonstrated Sukarchi personally: hired or fired employees; supervised and controlled Plaintiffs' work schedules or conditions of employment; determined Plaintiffs' rate and method of payment, or maintained employment records.

Sukarchi and Beach House's managers have likewise testified Sukarchi did not participate in Beach House's operations. (<u>See</u> <u>supra</u> Section II(B)(1), pp. 11-13). Sukarchi's Affidavit demonstrates Sukarchi was simply a passive fifty (50%) owner of Beach House, who never exercised any operational, management or supervisory authority at Beach House or over these Plaintiffs. (<u>See</u> Ex. 17 – Affidavit of Sukarchi). Steve Ghidella, who was Beach House's General Manager, testified that he did not report to Sukarchi and had final authority on all aspects of Beach House's operations. (<u>See</u> Ex. 2 – Depo. of Ghidella Excerpts, pp. 111-113). Beach House's managers each testified they never discussed Beach House's policies and procedures with Sukarchi. (<u>See</u> <u>supra</u> fn. 10).

Based upon the foregoing, Plaintiffs have not in any way whatsoever established Sukarchi was an "employer" under the FLSA, pursuant to the Fourth Circuit's standard outlined above. Defendants' Motion for Partial Summary Judgment regarding Plaintiffs' FLSA claims against Sukarchi, individually, should thus be granted accordingly.

### 2.    <u>Plaintiffs' Claims Against Sukarchi, Individually, Under the SCPWA Should Be Dismissed.</u>

South Carolina courts have held that the South Carolina legislature intended to impose individual liability under the SCPWA "on agents and officers of a corporation who ***<u>knowingly permit their corporation to violate the [SCPWA]</u>***." <u>Dumas v. InfoSafe Corp.</u>, 320 S.C. 188, 195,

463 S.E.2d 641, 645 (Ct. App. 1995) (emphasis added). Here, Plaintiffs have failed to present any evidence that Sukarchi knowingly permitted Beach House to violate the SCPWA. As stated above, all testimony in this case indicates that Sukarchi was, at most, a passive part-owner of Beach House and had no involvement in Beach House's management or operations. (See supra Section II(B), pp. 11-17). No Plaintiff has proffered any evidence that Sukarchi even had knowledge of, much less created, any policies that may violate the SCPWA. Testimony from Beach House's managers further evidence that Sukarchi did not have knowledge of Beach House's policies and procedures, and certainly had no involvement in Beach House's operations. (See supra fn. 10). Finally, Sukarchi has testified he did not create, approve of, or even know of the existence of any of Beach House's policies and/or procedures at issue in this lawsuit during the time period relevant to this lawsuit. (See Ex. 17 – Affidavit of Sukarchi, p. 2, paras. 8-9). Therefore, there is simply no evidence in this case that Sukarchi knowingly permitted Beach House to violate the SCPWA. Defendants' Motion for Partial Summary Judgment regarding Plaintiffs' SCPWA claims against Sukarchi, individually, should thus be granted accordingly.

## V.     CONCLUSION

All undisputed material facts in this case demonstrate: (1) Beach House did not share tips Plaintiffs contributed into the Beach House tip pool with back of the house employees; and (2) Sukarchi did not exercise operational control over Beach House or knowingly permit Beach House to violate the SCPWA. Based upon the foregoing, Defendants' Motion for Partial Summary Judgment should be granted in favor of Defendants and against Plaintiffs with regard to Plaintiffs' improper tip sharing claims and all claims alleged against Sukarchi, individually. If granted, all Plaintiffs' claims concerning tip redistribution to back of the house employees should be stricken from Plaintiffs' Third Amended Complaint, and Sukarchi should be dismissed from this lawsuit.

This case would then proceed with regard to Plaintiffs' remaining claims concerning Silverware

Charges, Walkout Charges, and Wrong Order charges against Beach House.

Respectfully submitted,

**BELLAMY, RUTENBERG, COPELAND,
EPPS, GRAVELY & BOWERS, P.A.**

s/Benjamin A. Baroody
Benjamin A. Baroody District Court I.D. No. 9442
Holly M. Lusk District Court I.D. No. 12587
Post Office Box 357
Myrtle Beach, South Carolina 29578-0357
843-448-2400
843-448-3022
bbbaroody@bellamylaw.com
hlusk@bellamylaw.com
Attorneys for Defendants