UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| HOLLY NYGAARD and QUANELL GEE, on behalf of themselves and all others similarly situated, | ) ) ) ) | C/A: 4:20-CV-00233-JD |
| Plaintiffs, | ) ) | **PLAINTIFFS'** |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| v. | ) | **MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |
| BEACH HOUSE HOSPITALITY GROUP, LLC d/b/a BEACH HOUSE BAR & GRILL | ) ) ) ) | **(FLSA)** |
| | ) | |
| Defendant. | ) | |

Plaintiffs, Holly Nygaard ("Nygaard") and Quanell Gee ("Gee"), individually, and on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through their undersigned counsel, submit this Memorandum to Support their Motion for Summary Judgment as to their First Cause of Action and selected affirmative defenses.

## NATURE OF CASE

This action was brought individually and as a collective action for actual damages, liquidated damages, attorney's fees and costs, and for other relief under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"). This court granted a consent motion and ordered Conditional Certification pursuant to § 216 of the FLSA (ECF 25).[1]

---

[1] This action was also brought individually and as a class action for payment of wages and for other relief under the South Carolina Payment of Wages Act, South Carolina Code Ann. § 41-10-10, et. seq. ("SCPWA"). This court denied Plaintiffs Motion for Rule 23 Class Certification; however, Nygaard and Gee, individually, will be filing a separate motion for summary judgment on their SCPWA claim.

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

## FACTS

Defendant, Beach House Hospitality Group, LLC d/b/a Beach House Bar and Grill is a South Carolina limited liability company and operates a restaurant in which it employs individuals, in Horry County, South Carolina, doing business as Beach House Bar and Grill ("Defendant" or "Beach House"). (ECF 98, ¶6; ECF 104, ¶5). Beach House admits that it is covered by and subject to the FLSA. (*Id.*, ¶21). Beach House also admits it paid Plaintiffs an hourly wage less than the statutory minimum wage by taking the tip credit under the FLSA, 29 USC § 203(m). ("Tip Credit"). (ECF 104, ¶18). Nygaard initially filed this action on January 23, 2020, therefore, a maximum 3-year time period begins January 24, 2017. In addition, by signed agreement between the parties, the statute of limitations was tolled from January 23, 2020 through March 12, 2020. Thus, the time period for this action is January 24, 2017 through March 12, 2020 ("Time Period").

Although Beach House took, or utilized, the Tip Credit in paying Plaintiffs,[2] it admits that neither Steve Ghidella ("Ghidella"), its General Manager ("GM"), nor any of the other three (3) managers,[3] Dave Goodbread ("Goodbread"); Billy Cargill ("Cargill"); or Scott Emde ("Emde"), knew anything about the Tip Credit. *See infra.*

- When former Defendant, Erez Sukarchi, promoted Ghidella to GM, Sukarchi asked Ghidella nothing about his knowledge of the FLSA or the Tip Credit. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House - p. 12:17 – p. 13:9.**

- When Ghidella was moved to management, he admits that he knew nothing about the Tip Credit. **Exhibit 4 - Dep. of Steve Ghidella - 22:13-17**

---

[2] Plaintiffs' direct hourly wages were either $2.13 or $2.15 per hour. **Exhibit 1 – Holly Nygaard's Payroll Records; Exhibit 2 -Declaration of Melissa D. Dixon.**
[3] Beach House testified that during the Time Period, Ghidella was GM, and the other managers were Goodbread, Cargill, and Emde. **Rule 30(b)(6) Deposition of Beach House - 28:10 - 14**

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

- When Goodbread, Cargill, and Emde were moved to management, none of them were asked any questions as to whether they knew anything about the FLSA or the Tip Credit. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House- 14:2 – 23; 15:8 – 23; 17:20 – 18:2.**

- Before this lawsuit, none of its management knew what the FLSA or the Tip Credit was. *Id.* **- 28:19-25; Exhibit 5 - Dep. of Dave Goodbread - 42: 6-14; Exhibit 6 - Dep. of Billy Cargill - 49:11 – 50:5; Exhibit 7 - Dep. of Scott Emde - 32: 7-9; 33: 18-20**

- Ghidella admitted his number one goal, as GM, was to increase net profit. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House- 21:1 – 4.**

- Walkouts:[4] When a guest walks out of Beach House without paying their tab.
    - Beach House had a policy, during the entire Time Period, requiring Servers and Bartenders to pay for Walkouts at the discretion of the managers.
    - Ghidella started this policy.
    - Before starting this policy, Ghidella did nothing to investigate to determine whether it was legal under the FLSA.
    - Beach House did not ask its attorneys to review the policy to determine whether it was legal.
    - Beach House did not ask any of its managers if they knew of any other restaurant that had this policy.
    - As far as Beach House knew, no other restaurant had this policy.
    - Beach House had no signed authorizations from any Server or Bartender to deduct tips to pay for their Walkouts.
    - Beach House has no record of when, how many times, or what amounts it required

---

[4] a/k/a "Dine-n-Dash"

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

    any of its Servers or Bartenders to pay for Walkouts.

**Exhibit 3 - Rule 30(b)(6) Dep. of Beach House- 33:2 – p. 35:1**

- Servers and bartenders *paid for their Walkouts from their tips* during "cash-out." ***Id.*, Exhibit 5 - Dep. of Dave Goodbread - 29:14 – 17; Exhibit 6 - Dep. of Billy Cargill - 24:15 – 25:1; Exhibit 7 - Dep. of Scott Emde – 42:12 – 43:11**

- Wrong Orders: Between the time the guest makes their food / drink order to when the food / drink arrives, the guest says no, this is not what I ordered. This could be miscommunication between the guest and Server / Bartender or the Server / Bartender keying in the wrong item. **Exhibit 4 - Dep. of Steve Ghidella – 204:18-23**

  - Ghidella continued the policy of Beach House requiring its Servers and Bartenders to pay for Wrong Orders at the discretion of the managers.
  - Beach House had no signed authorizations from any Server or Bartender to deduct from their wages for Walkouts.
  - Beach House did not have any conversations with any of its three (3) managers about any other restaurants using this policy.
  - Beach House did not investigate the FLSA to determine if this policy was legal.
  - Beach House did not have its attorneys determine if the policy was legal.
  - Beach House has no record of when or how much it charged the Servers or bartenders for Wrong Orders.

**Exhibit 3 - Rule 30(b)(6) Dep. of Beach House– 35:21 – 37:17**

- Servers and Bartenders *paid for Wrong Orders from their tips* during cash-out. ***Id.*, - 48:24 – 49:9; Exhibit 6 - Dep. of Billy Cargill – 24:15 – 25:1; Exhibit 7 - Dep. of Scott Emde – 42:12 – 43:11.**

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

- Beach House admits having Servers and Bartenders pay for Walkouts and Wrong Orders is a form of discipline. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House– 46:18 – 25.**

- "Cash-out" or "Tip-out" is the process at the end of the shift when the Server or Bartender meets with management to turn over the cash for sales. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House– 47:6-10.**

- During cash-out, Servers and Bartenders pay for any Walkouts or Wrong Orders with their tips. All of this money is placed onto Pile #1; placed in the South State bank bag, and eventually deposited in the South State operating account. *Id.* **- 48:20 – 49:9**

- During cash-out, Servers and Bartenders pay for the tip pool, from their tips, and that money is placed onto Pile #2 and eventually put in a zippered bag and placed in the manager's desk. *Id.* **– 49:10-17.**

- Beach House admits that "it has no evidence whatsoever as to the amounts of money" that its managers collected for Walkouts, Wrong Orders, or contributions to the tip pool, during the cash-out process. *Id.* **- 51: 9-14.**

- *Plaintiffs have each testified about the Cash-out or Tip-out process*:
  - No one from Beach House ever informed Plaintiffs that Beach House was going to use the "Tip Credit" in paying them their wages. (**Exhibit 8 –Declaration of Grace Carter; Exhibit 9 – Declaration of Quanell Gee; Exhibit 10 - Declaration of Kayla Gorniak; Exhibit 11 - Declaration of William Lubeck; Exhibit 12 - Declaration of Madalynn Morrone; Exhibit 13 - Declaration of Alexis McColgan; Exhibit 14 - Declaration of Victoria Miller; Exhibit 15 - Declaration of Aisha Moss; Exhibit 16 - Declaration of Holly Nygaard; Exhibit 17 - Declaration of Amanda Powers; Exhibit 18 - Declaration of Dave**

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

>    **Williams; Exhibit 19 - Declaration of Meredith Byrd**, hereinafter, collectively, "Plaintiffs' Declarations") **Plaintiffs' Declarations, ₱5.**
>
>    o   No one from Beach House ever informed Plaintiffs that they could keep all tips received by them except for a valid tip-pooling arrangement limited to front-of-the-house employees who helped. ("Tip Pool"). It would have been impossible for Beach House to inform them of this because Beach House required Plaintiffs to pay for Walkouts and Wrong Orders (Pile #1) **during the cash-out process** when they paid Beach House for these items, and for the Tip Pool (Pile #2) using the tips that they had earned that shift. **Id, ₱6**
>
>    o   Plaintiffs' tips that paid for Walkouts and Wrong Orders during the cash-out process were placed by the Beach House manager onto Pile #1. *Id.*, ₱7.
>
>    o   Plaintiffs' tips that paid for the tip-out to the Tip Pool during the cash-out process were placed by the Beach House manager onto Pile #2. *Id.*, ₱8.
>
>    o   Plaintiffs kept no records of when, or the amounts, that Beach House required them to pay for Walkouts and Wrong Orders, or the Tip Pool because they assumed that the law required Beach House to keep records of all deductions from their wages. *Id.*, ₱10.
>
> • All the money from the Servers and Bartenders that was placed in Pile #1 (cash sales; Walkouts; and Wrong Orders) was deposited into the South State Bank account, which was the operating account for Beach House. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House– 53:25 – 54:3.**
>
> • During the Time Period, Beach House paid a number of individuals cash from the South State operating account. These individuals were Beach House employees who were cooks

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

in the kitchen and some was paid to individuals to give to family members who cleaned the restaurant. *Id. – 54:24 – 55:9.*

- Commingling: Beach House admits that money it collected from Servers and Bartenders for Walkouts[5] was placed in the same account from which Beach House paid kitchen employees and janitors in cash. Beach House admits this money was commingled together, and it has no records to distinguish what money was from Walkouts and what money was from cash sales. Beach House admits that paying these kitchen employees with cash from this account was an intentional act. *Id. – 56:24 – 57:23.*

### ARGUMENT

**I.     Tip Credit**

> (m)(2)(A) In determining the wage an employer is required to pay a **tipped employee**, the amount paid such employee by the employee's employer shall be an amount equal to—
> 
> >  (i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee on August 20, 1996; and
> > 
> > (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 206(a)(1) of this title. The additional amount on account of tips may not exceed the value of the tips actually received by an employee. *The preceding 2 sentences shall not apply with respect to any tipped employee* **unless such employee has been informed by the employer of the provisions of this subsection, <u>and</u> all tips received by such employee have been retained by the employee**, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips.
> > 
> > (B) **An employer may not keep tips received by its employees for any purposes**, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.

29 U.S.C. § 203(m)(2) (emphasis added).

---

[5] Although this same question was not asked for Wrong Orders, the cash paid by servers and bartenders, from their tips, for wrong orders was also placed onto Pile #1 and deposited in the South State operating account.

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

### A. Proper Notice

Pursuant to section 3(m), an employer is not eligible to take the tip credit **unless** it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, *i.e.:* . . . that **all tips received by the tipped employee must be retained by the employee** *except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips*; and that **the tip credit shall not apply to any employee who has not been informed of these requirements in this section**.

29 C.F.R. 531.59 (emphasis added).

The Fourth Circuit Court of Appeals held in 1977 that the tipped employee must keep all tips, except for a valid tip pool.

> Congress amended the Fair Labor Standards Act on May 1, 1974. Section 3(m) of the Act was amended to prohibit an employer from taking the Tip Credit unless "all tips received by [the] employee [were] retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

*Richard v. Marriott Corp.*, 549 F.2d 303, 304 (4th Cir. 1977), *cert. denied,* 433 U.S. 915, 53 L. Ed. 2d 1100 , 97 S. Ct. 2988 (1977)

Thus, based on the federal statute; the regulation; and the interpretation by the Fourth Circuit, Defendant is not allowed to take the Tip Credit, *unless*, it has given the tipped employee notice of its using the Tip Credit, **and** the tipped employee is allowed to keep all tips except those contributed to a valid tip pool. With the facts outlined above, Defendant fails on both prongs:

- No proper notice was given to any Plaintiff. How could notice have been given when no one in Defendant's management had any knowledge of the Tip Credit; and

- Defendant has admitted that Beach House required Servers and Bartenders to pay for Walkouts and Wrong Orders by taking their tips during the cash-out process (Pile #1).

> [T]he FLSA's tip credit provision, which, by its own term, "shall not apply with respect to any tipped employee *unless* such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

> regularly receive tips."  The FLSA thus imposes two "predicates that must be satisfied even if the employee received tips at least equivalent to the minimum wage."

*Bernal v. Vankar Enters.*, 579 F. Supp. 2d 804, 807-08 (W.D. TX 2008) (footnote omitted) (emphasis in original).

"[T]he issue the Court must consider is whether Defendants satisfied the two prerequisites of section 203(m).  Defendants, as the employers, bear the burden of proving that they are entitled to taking tip credits." *Id.*, at 808 (footnote omitted).

> The FLSA clearly charges the employer with an affirmative obligation in this respect. An employer may not take tip credits against their minimum wage obligations "with respect to any tipped employee unless such employee has been informed by the employer of the [tip credit] provisions." Conversely, if we were to permit Defendants to substitute their statutory responsibility for an alleged general awareness of an industry-wide practice, the notice prerequisite of section 203(m) would be satisfied in every instance, and section 203(m) would be rendered mere surplusage.

*Id.*, at 809 (footnote omitted).

> It may at first seem odd to award back pay against an employer, doubled by liquidated damages, where the employee has actually received and retained base wages and tips that together amply satisfy the minimum wage requirements. Yet Congress has in section 3(m) expressly required notice as a condition of the tip credit and the courts have enforced that requirement. See *Richard v. Marriott Corp.,* 549 F.2d 303, 305 (4th Cir.).  It does not matter . . . whether Congress deemed notice a matter of fairness to the employee, a device for enforcing minimum wage payments, or both. If the penalty for omitting notice appears harsh, it is also true that notice is not difficult for the employer to provide.

*Reich v. Chez Robert, Inc.,* 28 F.3d 401, 404 (3rd Cir. 1994); *Martin v. Tango's Restaurant, Inc.*, 969 F.2d 1319, 1323 (1st Cir. 1992) (citations omitted).

> The First Circuit's view is shared by other courts that have addressed the section 3(m) notice requirement. In *Richard v. Marriott Corp.,* 549 F.2d 303 (4th Cir. 1977), the Fourth Circuit held that the district court erred when it allowed a partial tip credit for Marriott "out of a vague sense of fairness and a feeling that $ 5.43 and up per hour is enough for a waiter[ess]", when it was established that "Marriott never informed its employees of the provisions of Section 3(m) of the [Act]." *Id.* at 305.
>
> The Fifth Circuit has likewise held that where it was agreed that a restaurant did not inform waiters that a tip-credit was being deducted from their wages, "the

Page **9** of **16**

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

> district court properly found that the employees were entitled to the full minimum wage for every hour" at issue. *Barcellona v. Tiffany English Pub*, 597 F.2d 464, 467-68 (5th Cir. 1979); see also *Marshall v. Gerwill, inc.*, 495 F. Supp. 744, 753 (D. Md. 1980) (without section 3(m) notice, "retaining of tips by the [employees] cannot offset the failure to pay the applicable minimum wage."); *Bonham v. Copper Cellar Corp.,* 476 F. Supp. 98, 101-02 (E.D. Tenn. 1979) (barring tip credit for employer who failed to explain provisions of section 3(m) to employees, even though employer acted in good faith).

*Id.*

> "When the employer has not notified employees that their wages are being reduced pursuant to the Act's tip-credit provision, the district court may not equitably reduce liability for back wages to account for tips actually received." *Id.*

> [T]he employer is required to satisfy the following two statutory prerequisites in order to utilize the "tip credit" allowance: (1) the employer must inform the employee of the provisions in section 203(m); and (2) all tips received by an employee must be retained by the employee, "except that [§ 203(m)] shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." See 29 U.S.C. § 203(m). If the employer fails to meet either of these requirements, it is not eligible to claim the tip credit, and in such a case, the employer must pay each employee the full minimum wage of $7.25 an hour that is required under section 206.

*Pedigo v Austin Rumba, Inc*., 722 F. Supp. 2d 714, 721 (W.D. TX 2010).

> [S]ection 203(m) does not require employees to be aware of the tip credit provisions. Rather, section 203(m) affirmatively requires employers to inform employees of the provisions contained in section 203(m). See 29 U.S.C. § 203(m). Perhaps failing to recognize this fact, Defendant proffers as evidentiary support that "[t]he job applications of many of the servers who are part of this suit indicate that the expected salary is $2.13 per hour," which Defendant contends is "direct evidence that applicants understood what they were getting paid." See Def. Resp. at 5. An independent review of the five employment applications submitted merely reveals that each employee entered either "$2.13" or "$2.13 + tips" in the box entitled "Salary Desired." *Id.* at Ex. B. Evidence that, before being hired as employees, five applicants requested an hourly wage of $2.13 per hour plus tips is simply not evidence that the "employee has been informed by the employer of the provisions of [section 203(m) of the FLSA]" as required under the statute. See 29 U.S.C. 203(m). "**The language of the statute is clear. An employer is obliged to comply with the prerequisites of announcing its intention to take the tip credit and allowing employees to keep all tips they earn except what is pooled for the benefit of customarily tipped employees**..." *Bernal*, 2008 U.S. Dist. LEXIS 22814, 2008 WL 791963, at *3. Therefore, "[t]hat an employee 'expected to earn and retain their tips ... does not suggest even mildly that [the employee] knew

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

> anything of the minimum wage laws or defendants' intention to claim a tip credit against their obligations." *Holder v. MJDE Venture, LLC,* No. 1:08-CV-2218-TWT, 2009 U.S. Dist. LEXIS 111353, 2009 WL 4641757, at *2 (N.D. Ga. Dec. 1, 2009) (quoting *Martin v. Tango's Rest., Inc*., 969 F.2d 1319, 1323 (1st Cir. 1992)).
> *Id.*, at 724-25 (footnote omitted) (emphasis added).
>
> ### B. Defendant has Burden of Proof to Claim Tip Credit
>
> With regard to statutory exceptions, the United States Supreme Court has explained that "the general rule of statutory construction that the burden of proving the justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits . . ." *FTC v. Morton Salt Co.,* 334 U.S. 37, 44-45, 68 S. Ct. 822, 92 L. Ed. 1196, 44 F.T.C. 1499 (1948). Therefore, it holds true that:
>
>> When a proviso . . . carves an exception out of the body of a statute ... those who set up such exception must prove it (citations omitted). That longstanding convention is part of the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of persuasion on the other side.
>
> *Meacham v. Knolls Atomic Power Lab*., 554 U.S. 84, 128 S. Ct. 2395, 2400, 171 L. Ed. 2d 283 (2008) (identifying affirmative defenses contained in the ADEA after delineating between statutory prohibitions and exemptions). Accordingly, the Supreme Court has explicitly stated that "the general rule [is] that the application of **an exemption under the Fair Labor Standards Act is a matter of affirmative defense on which the employer has the burden of proof**." *Corning Glass Works v. Brennan,* 417 U.S. 188, 196-197, 94 S. Ct. 2223, 41 L. Ed. 2d 1 (1974). As explained above, there is no hint in the text of section 216 or section 203(m) that Congress intended section 203(m) "to march out of step with either the general or specifically FLSA default rules placing the burden of proving an exemption on the party claiming it." *Meacham v. Knolls Atomic Power Laboratory*, 554 U.S. 84, 128 S.Ct. 2395, 2401, 171 L. Ed. 2d 283 (2008).

*Pedigo*, 722 F. Supp. 2d at 722-23 (footnotes omitted) (emphasis added).

"More recently, the district courts within the Fifth Circuit that have considered the issue have unanimously concurred that "Defendants, as the employers, bear the burden of proving that they are entitled to taking tip credits."" *Id.*, at 723-24.

There is no genuine issue of material fact: Beach House never gave Plaintiffs proper notice that it was paying Plaintiffs with the Tip Credit. Beach House had no knowledge of the FLSA or

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

the Tip Credit. How could it give Plaintiffs notice of something no one knew about? Moreover, proper notice required Plaintiffs to keep all their tips, except for a valid tip pool. This was impossible because Beach House has admitted that it required, during the entire Time Period, Plaintiffs to pay Beach House for Walkouts and Wrong Orders. Beach House has also admitted that it knew Plaintiffs were paying for Walkouts and Wrong Orders, during cash-out, by paying with their tips. Thus, there is no genuine issue of material fact: Beach House failed to give Plaintiffs any notice it was paying them using the Tip Credit, and it was impossible to tell Plaintiffs that they could keep all tips, except for a valid tip pool, because they required payment for Walkouts and Wrong Orders.

## II. COMMINGLING OF TIPS AND CASH FROM SALES

A separate theory of how Defendant violated the Tip Credit is Defendant's requirement that servers and bartenders pay Beach House for Walkouts and Wrong Orders. Defendant's managers collected this money during cash-out, which Defendant and its three (3) managers have admitted was from Plaintiffs' tips, and then placed onto Pile #1. All the cash from Pile #1 (cash sales; Walkouts; and Wrong Orders) was commingled and deposited in the South State operating account. **Exhibit 3 - Rule 30(b)(6) – 48:16 – 49:9; 49:18 – 50:20; 53:25 – 54:3.** This alone is a violation of the Tip Credit because Plaintiffs were not keeping their tips, except for the Tip Pool; however, Beach House went further. Each Monday, Ghidella would withdraw cash to pay five kitchen employees in cash, rather than them being paid through the payroll account like the other employees. **Exhibit 4 - Dep. of Steve Ghidella – 173:1-3.** Some of these employees then gave cash to family members who cleaned the restaurant. *Id.* **– 181:12 – 182:21.** Beach House admits that it has **no evidence** of the number of times or the amount of money it charged Plaintiffs for Walkouts and Wrong Orders. **Exhibit 3 - Rule 30(b)(6) – 41: 1-23.** Beach House sharing these

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

tips with employees who are cooks and individuals who are janitors is an additional violation of the Tip Credit.[6]

In addition to the above, Defendant admits that if any of the tips that Plaintiffs receive ends up paying a kitchen employee, that would be a violation of the FLSA. **Exhibit 4 - Dep. of Steve Ghidella - 104:13 – 105:2.**

> Q. Okay. Can the restaurant Beach House -- can Beach House require its servers and bartenders share a portion of the tips with kitchen employees?
> A. No.
> Q. With janitors?
> A. No.
> Q. That would be a violation of federal law, right?
> A. Yes.
> Q. Okay. So you would agree with me that if any of the tips that the servers or bartenders receive, any of that money ends up paying a kitchen employee, that would be a violation of the FLSA, correct?
> A. Yes.

The Tip Credit is an exemption Defendant is trying to utilize to avoid paying minimum wage. The requirements of minimum wage are determined on a weekly basis, not each day. *At the end of the workweek*, an employer must pay a nonexempt employee at least $7.25 for each hour worked. This is not determined on an hourly or daily basis. The same rationale holds for the employer's use, or loss, of the exemption, or in this case, the Tip Credit. This is determined on a **weekly** basis. "The FLSA is best understood as the minimum wage / maximum hour law." *Trejo v. Ryman Hospitality Props.*, 795 F.3d 442, 446 (4th Cir. 2015). Thus, if the employer violates the requirements of the Tip Credit at any time during the week, it loses the use of the Tip Credit *for the entire week*. Beach House has admitted that it utilized the policy of both Walkouts and Wrong Orders throughout the Time Period. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House- 3:2**

---

[6] This sharing is totally separate from the **Tip Pool**, which tips all went onto **Pile #2** during the Cash-Out process. (See ECF 97, No. 3-5) (emphasis added).

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

**- 5; 35:21 – 36:5.** Each week during the Time Period, Beach House used cash, from the commingled South State operating account, to pay cash to kitchen employees. Thus, it is impossible for Defendant to prove its entitlement to the Tip Credit during the Time Period.

There is no genuine issue of material fact; Defendant is not entitled to the Tip Credit. This court should grant Plaintiffs' motion.

### III.    DEFENDANT'S AFFIRMATIVE DEFENSES

Defendant has pled numerous affirmative defenses. For many of these, either the defense does not apply to this case, or there has been no evidence produced by Defendants relating to the Defense. Plaintiffs request that this court grant them Summary Judgment relating to the following Affirmative Defenses from Defendant's Answer (ECF 104).

#### A.  Third Defense, *Id.*, ¶ 35.

Defendant asserts waiver and estoppel related to statements of representations made to the Internal Revenue Service or South Carolina Department of Revenue in the preparation and filing of their federal and state tax returns. There has been no evidence produced relating to this defense; therefore, Plaintiffs are entitled to Summary Judgment.

#### B.  Fourth, Fifth, Sixth Defenses, *Id.*, ¶¶ 37; 39; 41.

Defendants have alleged that a FLSA collective action is inappropriate. Defendants earlier filed a motion to decertify the collective action (ECF 103), but then withdrew that motion with prejudice. (ECF 106), therefore, Plaintiffs are entitled to Summary Judgment as to these three (3) defenses.

#### C.  Ninth, Tenth, Eleventh Defenses, *Id.*, ¶¶ 47; 49; 51.

Defendant alleged that its actions were taken in good faith and with reasonable grounds to believe it's conduct comported with federal law come on thereby, precluding an award of liquidated

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

damages. Beach House admitted, in its deposition, it actions lacked any good faith. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House- 69:8 – 71:16; Dep. Exh. #7.** Thus, Plaintiffs are entitled to Summary Judgment as to these three (3) defenses.

### D. Twelfth Defense, *Id*., ₱ 53.

Defendant alleges its activities were *de minimis* in nature. They stipulated damages, even for just two (2) years, clearly show these activities were not *de minimis*. Thus, Plaintiffs are entitled to Summary Judgment as to this defense.

### E. Seventeenth Defense, *Id*., ₱ 63.

Defendant alleges Plaintiffs failed to mitigate their damages. This action is for failure of defendants to comply with the Tip Credit, therefore, it seeks minimum wage during the time plaintiffs worked for defendant. This is not a case where plaintiffs could mitigate the damages they are seeking. Thus, plaintiffs are entitled to summary judgment as to this defense.

### F. Eighteenth, Twenty-First, Twenty-Second, Twenty-Third Defenses, *Id*., ₱₱ 65; 71; 73; 75.

Defendant alleges payment, set off, and offset four payments already made by Defendant to Plaintiffs. Defendants have presented no evidence to support any of these affirmative defenses, therefore, Plaintiffs are entitled to Summary Judgment as to these defenses.

### G. Twenty-Sixth Defense, *Id*., ₱ 81.

Defendant alleges a defense relating to preliminary or post liminary work. This defense is inapplicable to the allegations of the Complaint; therefore, Plaintiffs are entitled to Summary Judgment as to this defense.

### H. Twenty-Seventh Defense, *Id*., ₱ 83.

Defendant alleges any claims for bankruptcy by Plaintiffs bar Plaintiffs from pursuing this

Plaintiffs' Memorandum in Support of Motion for Summary Judgment
C/A: 4:20-CV-00233-JD

action. Defendants have produced no evidence of any Plaintiff filing for bankruptcy, therefore, Plaintiffs are entitled to Summary Judgment as to this defense.

## CONCLUSION

Defendant failed to give Plaintiffs proper notice of its use of the Tip Credit. With the policies of Walkouts and Wrong Orders, it was impossible for Defendant to allow Plaintiffs to keep all of their tips, except the valid tip pool. The commingling of money in Pile #1 and the cash paid to kitchen employees and janitors is a clear violation of the Tip Credit. There can be no genuine issue of material fact, but that Defendant violated the Tip Credit for the entire Time Period. Plaintiffs request that this Court grant them Summary Judgment.

In the alternative, Plaintiffs request that this Court grant it Summary Judgment as to the selected affirmative defenses.

 

                                       s/Bruce E. Miller
                                       Bruce E. Miller, Esq. (Fed Bar No. 3393)
                                       BRUCE E. MILLER, P.A.
                                       147 Wappoo Creek Drive, Suite 603
                                       Charleston, SC  29412
                                       T: 843.579.7373
                                       F: 843.614.6417
                                       bmiller@brucemillerlaw.com

                                       **ATTORNEY FOR PLAINTIFFS**

CHARLESTON, SC
September 8, 2022