UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| HOLLY NYGAARD and ) <br> QUANELL GEE, on behalf of themselves ) <br> and all others similarly situated, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BEACH HOUSE HOSPITALITY ) <br> GROUP, LLC d/b/a ) <br> BEACH HOUSE BAR & GRILL; and ) <br> EREZ SUKARCHI, individually, ) <br> ) <br> Defendants. ) | C/A: 4:20-CV-00233-JD <br><br> **PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON LIQUIDATED DAMAGES AND THREE-YEAR STATUTE OF LIMITATIONS** |

Plaintiffs, Holly Nygaard ("Nygaard") and Quanell Gee ("Gee"), on behalf of themselves and all others similarly situated ("Plaintiffs"), by and through their undersigned counsel, submit this Memorandum to Support their Motion for Summary Judgment on Liquidated Damages and a Three-Year Statute of Limitations.[1]

## NATURE OF CASE

This action is brought individually and as a collective action for actual damages, liquidated damages, attorney's fees and costs, and for other relief under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"). This court granted a consent motion and ordered Conditional Certification pursuant to § 216 of the FLSA (ECF 25).

Plaintiffs are contemporaneously filing a Motion for Summary Judgment.

---

[1] Defendant has asserted, as an Affirmative Defense, that the issues of both Liquidated Damages and Statute of Limitations are for the court and not for a jury. (ECF 104, ¶ 57).

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

## FACTS[2]

Defendant, Beach House Hospitality Group, LLC d/b/a Beach House Bar and Grill is a South Carolina limited liability company and operates a restaurant in which it employs individuals, in Horry County, South Carolina, doing business as Beach House Bar and Grill ("Defendant" or "Beach House").  (ECF 98, ¶6; ECF 104, ¶5).  Beach House admits that it is covered by and subject to the FLSA.  (*Id.*, ¶21).[3]  Beach House also admits it paid Plaintiffs an hourly wage less than the statutory minimum wage by taking the tip credit under the FLSA, 29 USC section mark 203(m).  ("Tip Credit").  (ECF 104, ¶18).  Nygaard initially filed this action on January 23, 2020, therefore, a maximum 3-year time period begins January 24, 2017.  In addition, by signed agreement between the parties, the statute of limitations was tolled from January 23, 2020 through March 12, 2020.  Thus, the time period for this action is January 24, 2017 through March 12, 2020 ("Time Period").

Although Beach House took, or utilized, the tip credit in paying Plaintiffs,[4] it admits that neither Steve Ghidella ("Ghidella"), its General Manager ("GM"), nor any of the other three (3) managers,[5] Dave Goodbread ("Goodbread"); Billy Cargill ("Cargill"); or Scott Emde ("Emde"), knew anything about the Tip Credit.  *See infra.*

- Beach House and its "Sister Restaurants" – **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House - p. 9:8 – p. 11:23; Exh. 2 from Dep. – page from Beach House website**

---

[2]  Although many of the facts and exhibits are the same in Plaintiffs' motion for summary judgment, they are repeated and attached here for the court's convenience.

[3]  In addition, beach house admits that it is an employer as defined by the South Carolina payment of wages act.  (ECF 104, ¶27).

[4]  Plaintiffs' direct hourly wages were either $2.13 or $2.15 per hour.  **Exhibit 1 – Holly Nygaard's Payroll Records; Exhibit 2 - Declaration of Melissa D. Dixon.**

[5]  Beach House testified that during the Time Period, Ghidella was GM, and the other managers were Goodbread, Cargill, and Emde.  **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House – 28:10 – 14.**

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

- Beach House started in 2004 by Erez Sukarchi ("Sukarchi")[6]

- Sukarchi manages the Beach House LLC

- Exhibit 2 names "sister restaurants"

- Sukarchi has an ownership in each of them

- Wicked Tuna

  - Beach House and Sukarchi knew of lawsuit alleging violations of FLSA

  - Sukarchi was a named defendant in this action in which he submitted a Joint Motion for Approval of Fair Labor Standards Act Settlement (**Exhibit 5 – Wicked Tuna - Joint Motion to Approve Settlement**), which was approved by this court. **Exhibit 6 – Wicked Tuna - Order Approving Settlement**.[7]

- Good Time Charley's

  - Beach House knew of lawsuit alleging violations of FLSA

  - Beach House knew there was a Joint Motion to Approve Settlement of an FLSA Collective Action **Exhibit 7 – Good Time Charley's - Joint Motion to Approve Settlement**. **Exhibit 8 – Good Time Charley's - Order Approving Settlement.**[8]

- Rooster's

  - Like Wicked Tuna, Sukarchi was a named defendant in this action in which

---

[6] Sukarchi was a Named Defendant from initial filing until March 17, 2021, when Plaintiffs dismissed him as part of agreements with Defendant. (ECF 100).

[7] Both the Joint Motion and Order note that Plaintiffs had alleged a violation of the Tip Credit.

[8] Like *Wicked Tuna*, both the Joint Motion and Order note that Plaintiffs had alleged a violation of the Tip Credit.

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

> he submitted a Joint Motion for Approval of Fair Labor Standards Act Settlement (**Exhibit 9 – Rooster's - Joint Motion to Approve Settlement**), which was approved by this court. **Exhibit 10 - Rooster's - Order Approving Settlement**.[9]

- When former Defendant, Erez Sukarchi, promoted Ghidella to GM, Sukarchi asked Ghidella nothing about his knowledge of the FLSA or the Tip Credit. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House - p. 12:17 – p. 13:9.**

- When Ghidella was moved to management, he knew nothing about the Tip Credit. **Exhibit 10 - Dep. of Steve Ghidella - 22:13-17**

- When Goodbread, Cargill, and Emde were moved to management, none of them were asked any questions as to whether they knew anything about the FLSA or the Tip Credit. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House - 14:2 – 23; 15:8 – 23; 17:20 – 18:2.**

- Before this lawsuit, none of its management knew what the FLSA or the Tip Credit was. *Id.* **- 28:19-25; Exhibit 11 - Dep. of Dave Goodbread - 42: 6-14; Exhibit 12 - Dep. of Billy Cargill - 49:11 – 50:5; Exhibit 13 - Dep. of Scott Emde - 32: 7-9; 33: 18-20**

- Ghidella admitted his number one goal, as GM, was to increase net profit. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House - 21:1 – 4.**

- Walkouts:[10] When a guest walks out of Beach House without paying their tab.
    - Beach House had a policy, during the entire Time Period, requiring Servers and Bartenders to pay for walkouts.

---

[9] Like *Wicked Tuna* and *Good Time Charley's*, both the Joint Motion and Order note that Plaintiffs had alleged a violation of the Tip Credit.
[10] a/k/a "Dine-n-Dash"

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

- o Ghidella started this policy.
- o Before starting this policy, Ghidella did nothing to investigate to determine whether it was legal under the FLSA.
- o Beach House did not ask its attorneys to review the policy to determine whether it was legal.
- o Beach House did not ask any of its managers if they knew of any other restaurant that had this policy.
- o As far as Beach House knew, no other restaurant had this policy.
- o Beach House had no signed authorizations from any Server or Bartender to deduct tips to pay for their Walkouts.
- o Beach House has no record of when, how many times, or what amounts it required any of its Servers or Bartenders to pay for Walkouts.
- o **Servers and bartenders paid for their walkouts from their tips during "cash-out." Exhibit 11 - Dep. of Dave Goodbread - 29:14 – 17; Exhibit 12 - Dep. of Billy Cargill - 24:15 – 25:1; Exhibit 13 - Dep. of Scott Emde – 42:12 – 43:11**

**Exhibit 3 - Rule 30(b)(6) Dep. of Beach House - 33:2 – p. 35:1**

- Wrong Orders: Between the time the guest makes their food / drink order to when the food / drink arrives, the guest says no, this is not what I ordered. This could be miscommunication between the guest and Server / Bartender or the Server / Bartender keying in the wrong item. **Exhibit 10 - Dep. of Steve Ghidella – 204:18-23**

  - o Ghidella continued the policy of Beach House requiring its Servers and Bartenders to pay for Wrong Orders at the discretion of the managers.
  - o Beach House had no signed authorizations from any Server or Bartender to deduct

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

> from their wages for Walkouts.
>
> o Beach House did not have any conversations with any of its three (3) managers about any other restaurants using this policy.
>
> o Beach House did not investigate the FLSA to determine if this policy was legal.
>
> o Beach House did not have its attorneys determine if the policy was legal.
>
> o Beach House has no record of when or how much it charged the Servers or bartenders for Wrong Orders.
>
> o Servers and Bartenders paid for Wrong Orders from their tips during cash-out
>
> **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House - 48:24 – 49:9; Exhibit 12 - Dep. of Billy Cargill – 24:15 – 25:1; Exhibit 13 - Dep. of Scott Emde – 42:12 – 43:11**

**Exhibit 3 - Rule 30(b)(6) Dep. of Beach House – 35:21 – 37:17**

- Beach House admits that having the Servers and Bartenders pay for Walkouts and Wrong Orders is a form of discipline. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House – 46:18 – 25.**

- "Cash-out" or "Tip-out" is the process at the end of the shift when the Server or Bartender meets with management to turn over the cash for sales. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House – 47:6-10.**

- During Cash-out, Servers and Bartenders pay for any Walkouts or Wrong Orders with their tips. All of this money is placed onto Pile #1; placed in the South State bank bag, and eventually deposited in the South State operating account. *Id.* **- p. 48:20 – p. 49:9**

- During cash-out, Servers and Bartenders pay for the tip pool, from their tips, and that money is placed onto Pile #2 and eventually put in a zippered bag and placed in the manager's desk. *Id.* **– 49:10-17.**

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

- Servers and Bartenders give managers the money for the tip pool, or tip out, and this is placed onto pile number two (2); placed in the zippered bag; and left in the manager's desk, same as the Bartenders. *Id.* **– 50:21 – 51:14.**

- Beach House admits that "it has no evidence whatsoever as to the amounts of money" that its managers collected for Walkouts, Wrong Orders, or contributions to the tip pool, during Cash-out. *Id.* **– 51:9-14.**

- *Plaintiffs have each testified about the Cash-out or Tip-out process*:
    - No one from Beach House ever informed Plaintiffs that Beach House was going to use the "Tip Credit" in paying them their wages. (**Exhibit 14 - Declaration of Grace Carter; Exhibit 15 – Declaration of Quanell Gee; Exhibit 16 - Declaration of Kayla Gorniak; Exhibit 17 - Declaration of William Lubeck; Exhibit 18 - Declaration of Madalynn Morrone; Exhibit 19 - Declaration of Alexis McColgan; Exhibit 20 - Declaration of Victoria Miller; Exhibit 21 - Declaration of Aisha Moss; Exhibit 22 - Declaration of Holly Nygaard; Exhibit 23 - Declaration of Amanda Powers; Exhibit 24 - Declaration of Dave Williams; Exhibit 25 - Declaration of Meredith Byrd**, hereinafter, collectively, "Plaintiffs' Declarations") **Plaintiffs' Declarations, ¶5.**
    - No one from Beach House ever informed Plaintiffs that they could keep all tips received by them except for a valid tip-pooling arrangement limited to front-of-the-house employees who helped. ("Tip Pool"). It would have been impossible for Beach House to inform them of this because Beach House required Plaintiffs to pay for Walkouts and Wrong Orders **during the cash-out process** when they paid Beach House for these items, and for the Tip Pool (Pile #2) using the tips that they

Page **7** of **15**

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

       had earned that shift. *Id*., ¶6

- o Plaintiffs' tips that paid for Walkouts and Wrong Orders during the cash-out process were placed by the Beach House manager onto Pile #1. *Id.*, ¶7.

- o Their tips that paid for the tip-out to the Tip Pool during the cash-out process were placed by the Beach House manager onto Pile #2. *Id.*, ¶8.

- o Plaintiffs kept no records of when, or the amounts, that Beach House required them to pay for Walkouts, Wrong Orders, Silverware,[11] or the Tip Pool because they assumed that the law required Beach House to keep records of all deductions from their wages. *Id.*, ¶10.

- During the Time Period, Beach House paid a number of individuals cash from the South State operating account. These individuals were Beach House employees who were cooks in the kitchen and some was paid to individuals to give to family members who cleaned the restaurant. *Id.* – 54:24 – 55:9.

- Commingling: Beach House admits that money it collected from Servers and Bartenders for Walkouts[12] was placed in the same account from which Beach House paid kitchen employees and janitors in cash. Beach House admits this money was commingled together and it has no records to distinguish what money was from Walkouts and what money was from cash sales. Beach House admits that paying these kitchen employees with cash from

---

[11] Plaintiffs have all testified that they were required, on various occasions, to pay Beach House for Silverware during Cash-out. They all used their tips to pay for this; however, at least one Beach House Manager testified that money for Silverware was collected by him at times other than during Cash-out. Because of this, Plaintiffs are not using this as a ground for this Motion for Summary Judgment.

[12] This same argument would apply to cash paid by servers and bartenders, from their tips, for wrong orders.

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

this account was an intentional act. *Id.* **– 56:24 – 57:23.**

## ARGUMENT

**I.    FLSA.**

Congress enacted the Fair Labor Standards Act in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. §§ 201 et seq.

> The FLSA "is a remedial statute designed to 'eliminate . . . substandard labor conditions' in the United States." *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117, 124 (E.D.N.C. 2011) (quoting *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 510 (1950)). "The FLSA is best understood as the 'minimum wage/maximum hour law.'" *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (quoting *Monahan v. Cty. of Chesterfield*, 95 F.3d 1263, 1266 (4th Cir. 1996)). "In enacting the FLSA, Congress intended 'to protect all covered workers from substandard wages and oppressive working hours.'" *Id.* (quoting *Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). Consequently, the FLSA's substantive sections "'narrowly focus[] on minimum wage rates and maximum working hours,'" *Id.* (quoting *Monahan*, 95 F.3d at 1267), requiring the payment of a minimum wage and providing specific limits on the maximum hours an employee may work without receiving the requisite overtime compensation, *see Id.* (citing 29 U.S.C. §§ 206(a), 207(a)).

*Regan, et al. v. City of Charleston,* 2:13-cv-3046-PMD (ECF 172, at 4-5).

**II.    LIQUIDATED DAMAGES.**

> Liquidated damages "are considered compensatory rather than punitive in nature," *Reich v. Southern New England Telecommunications Corp*, 121 F.3d 58, 71 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707, 89 L. Ed. 1296, 65 S. Ct. 895 (1945)), and constitute "compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Id.* (quoting *Brooklyn Sav. Bank*, 324 U.S. at 707).

*Roy v Lexington County*, 141 F.3d 533, 548 (4th Cir. 1998).

> Liquidated damages are awarded in addition to compensatory damages and are equal to the compensatory damages, resulting in a double damage award. *Fowler v. Land Management Groupe, Inc.*, 978 F.2d 158, 162 (4th Cir. 1992) (citing 29 U.S.C. § 216(b)). The FLSA plainly envisions that **liquidated damages in an**

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

> **amount equal to the actual damages are the norm for violations of the Act.** 29 U.S.C. § 216(b). *Mayhew v Wells*, 125 F.3d 216, 220 (4th Cir. 1997). The district court, in its sound discretion, may refuse to award liquidated damages if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the FLSA. 29 U.S.C. § 260. The exception to the general rule of liquidated damages puts upon the employer the "plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Wright v. Carrigg*, 275 F.2d 448, 449 (4th Cir. 1960). Furthermore, a finding that the employer did not willfully violate the FLSA in no way forecloses a finding that the employer did not act in good faith, as proof of an intentional violation of the FLSA is unnecessary to obtain an award of liquidated damages.

*Troutt v. Stavola Brothers, Inc.*, 905 F. Supp. 295, 302 (M.D.N.C. 1995) (emphasis added).

> Although Congress's use of "and" in § 260 suggests that an employer must establish both reasonableness and good faith, the Fourth Circuit has held proof of either reasonableness or good faith to be sufficient. *See Id.* at 375–76 (affirming district court's denial of liquidated damages because evidence supported district court's finding of good faith); *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997) ("[W]e have previously found no abuse of discretion when the court below was convinced only of one prong"); *Brinkley–Obu v. Hughes Training, Inc.*, 36 F.3d 336, 357–58 (4th Cir. 1994) (finding no abuse of discretion where district court was satisfied as to the employer's good faith). The good-faith prong requires proof of objective, not subjective, good faith. *Clifton D. Mayhew, Inc. v. Wirtz*, 413 F.2d 658, 661–62 (4th Cir. 1969).

*Regan, et al. v. City of Charleston*, 2:13-cv-3046-PMD (ECF 172, at 33).

From the above standard, this is what is before this court: This court shall award Plaintiffs Liquidated Damages, in an amount equal to their actual damages, unless **Defendant can prove** an objective, good faith reason of why it charged Plaintiffs for Wrong Orders and Walk Outs, knowing that Plaintiffs were paying for this with their tips. Based on the record, Plaintiffs contend there is no genuine issue of material fact – Defendants are unable to meet their burden of proof; thus, this court should award Plaintiffs Liquidated Damages equal to their compensatory damages.

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

Defendants' total ignorance about the FLSA or the Tip Credit not only lacks any objective good faith, but it is also clear, reckless disregard for following the basic employment laws of the restaurant industry. Sukarchi and Beach House knew of the three other cases: Wicked Tuna; Good Time Charley's; and Roosters; and their settlements of violations of the Tip Credit. These occurred in 2016 and 2017, before the Time Period started in the present action. Although Beach House took, or utilized, the Tip Credit in paying Plaintiffs, it admits that none of its management team knew anything about the Tip Credit. Both Beach House, and Sukarchi, the manager of Beach House LLC, did absolutely nothing to ensure Beach House was complying with the Tip Credit.

Courts have made it clear that an employer may not simply remain blissfully ignorant of FLSA requirements. *Burnley v Short*, 730 F.2d 136, 140 (4th Cir. 1984), citing *Reeves v. International Telephone & Telegraph Corp.*, 616 F.2d 1342, 1353 (5th Cir. 1980), *cert. denied*, 449 U.S. 1077, 66 L. Ed. 2d 800, 101 S. Ct. 857 (1981) ("It is not enough, for instance, to plead and prove ignorance of the wage requirements. Knowledge will generally be imputed to the offending employer.); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468-69 (5th Cir. 1979); *Mitchell v. Hausman*, 261 F.2d 778, 780 (5th Cir. 1958).

> "[A]n employer may not rely on ignorance alone as reasonable grounds for believing that its actions were not in violation of the Act. Further, we feel that good faith requires some duty to investigate potential liability under the FLSA. Even inexperienced businessmen cannot claim good faith when they blindly operate a business without making any investigation as to their responsibilities under the labor laws. Apathetic ignorance is never the basis of a reasonable belief."

*Barcellona*, 597 F.2d at 468-69.

In *Roy*, the Fourth Circuit found that the employer, by seeking a legal opinion, even though eventually incorrect, had not taken an "ostrichlike approach" to the Act. 141 F.3d at 549. In the present case, taking an "ostrichlike approach" is exactly what Defendants did. Rather than

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

spending any money on a legal opinion to determine if requiring their employees to help pay for overhead, Ghidella's number one goal was to increase net profit. Requiring Plaintiffs to pay for Walkouts and Wrong Orders was part of that plan. If Defendant's actions were not an "ostrichlike" approach, then what is?

There is no genuine issue of material fact as to this issue. Defendant is unable to prove an objective, good faith reason why it required Plaintiffs to use their tips to pay for Walkouts and Wrong Orders. Defendant also has no answer as to why it never consulted an attorney regarding its policies to ensure it was in compliance with the Tip Credit, despite having previously litigated and settled this issue with its three sister restaurants. **Exhibit 3 - Rule 30(b)(6) Dep. of Beach House - 8 – 11; 33:13-19.** Plaintiffs are entitled to a full award of Liquidated Damages equal to their compensatory damages.

## III. THREE YEAR STATUTE OF LIMITATIONS[13]

> "The FLSA provides two potential limitations periods." *Desmond*, 630 F.3d at 357. For non-willful FLSA violations, a two-year period applies. *Id.* When the violation is willful, the period is three years. *Id.* The two-year period applies unless the employees prove willfulness. *See Id.* at 358 (citing 29 U.S.C. § 255(a)); *see also Cubias v. Casa Furniture & Bedding, LLC*, No. 1:06CV386 (JCC), 2007 WL 150973, at *3 (E.D. Va. Jan. 16, 2007) ("The FLSA is typically governed by a two-year statute of limitations, but provides for a three year statutory period if the Plaintiff can establish that the violation was willful." (citing 28 U.S.C. § 255(a)).
>
> In the context of the FLSA's statute of limitations, willfulness means the employer "either knew **or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]**." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). "'[W]illful' is considered synonymous with 'deliberate' and 'intentional.'" *Butler v. DirectSAT USA, LLC*, 55 F. Supp. 3d 793, 802 (D. Md. 2014) (quoting *McLaughlin*, 486

---

[13] Plaintiffs adopt and incorporate all the arguments that they made in the section on Liquidated Damages above as if repeated in this section. For many of the same reasons that Defendant is unable to prove an objective good faith reason of why it took this action, these same facts prove Defendants acted in reckless disregard of complying with the requirements of using the Tip Credit.

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

> U.S. at 133). "Negligent conduct is insufficient to show willfulness." *Desmond*, 630 F.3d at 538 (citing *McLaughlin*, 486 U.S. at 135).

*Regan,* (ECF 172 at 31-32) (emphasis added).

An employer's conduct is considered to be in reckless disregard of the FLSA if the employer should have inquired further into whether its conduct was in compliance with the FLSA and failed to make such inquiry. *De Jesus De Luna-Guerrero v. N.C. Grower's Ass'n.,* 370 F. Supp.2d 386, 389-90 (E.D.N.C. 2005), *citing* 29 CFR §578.3(c)(3). The employer cannot simply "bury his head in the sand" regarding his FLSA duties. *Brantley v. Ferrell Elec., Inc.,* 2015 U.S. Dist. LEXIS 69865, *65 (S.D. Ga. 2015). Defendant knew that it must comply with the law regarding its use of the Tip Credit after its sister restaurants were Defendants in litigation for violating the Tip Credit. **Rule 30 (6)(b) Dep. of Beach House – 9:19 – 11:23.** Defendant chose to recklessly disregard this knowledge and never consult with their attorney when establishing its policies regarding Walk Outs and Wrong Orders. *Id.***, 33:13-19.** Defendant chose to allow Ghidella, its General Manager, to set policies in place for Plaintiffs with no knowledge of the FLSA or Tip Credit. *Id.,* **33:2 – 19; 35:21 – 36.** When it received complaints from Plaintiffs, Defendant simply "buried their heads in the sand" by telling Plaintiffs they may either comply with its policies or find another job. **Exhibit 14 - Dep. of William Lubeck – 37:2 – 25.**

As defined by the Code of Federal Regulations, "reckless disregard" is the "failure to make adequate inquiry into whether conduct is in compliance with the Act." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1163 (11th Cir. 2008) *quoting* 5 C.F.R. § 551.104. The "three-year statute of limitations may apply even when the employer did not knowingly violate the FLSA; rather, it may apply when it simply disregarded the possibility that it might be violating the

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

FLSA." *Williams v. R.W. Cannon, Inc.,* 2008 U.S. Dist. LEXIS 67490, *56 (S.D. Fl. 2008), *quoting, Allen v. Bd. of Public Ed.,* 495 F.3d 1306, 1324 (11th Cir. 2007).

In addition to its reckless disregard of complying with the Tip Credit, Defendant was also reckless in complying with its obligations to pay overtime, FLSA § 207. Ghidella admitted that during the Time Period he would take servers and bartenders who had worked more than 40 hours in a work week, but pay them for 40 hours only. At one point, he certified four Plaintiffs worked precisely 40.0 hours in a work week. His excuse was that this was "common practice'; however, he knew the law required them to be paid an overtime rate for all hours worked over 40 in the workweek. **Dep. Ghidella – 163:23 – 168:7**; ECFs 60 and 61. This intentional act is further evidence of Defendant's reckless disregard for complying with the FLSA.

Defendant cannot hide behind an imagined curtain that they never knew anything. Defendant created the management structure, outlined above, which resulted in the admitted complaints to the managers. This is a clear, reckless disregard in complying with the FLSA and Tip Credit. *Cubias v. Casa Furniture & Bedding, LLC*, 2007 U.S. Dist. LEXIS 3380, *9 (E.D. Va. Jan. 16, 2007).

## CONCLUSION

There is no genuine issue of material fact that Defendant is unable to present an objective good faith reason of why it used Plaintiffs' tips to pay for Walk Outs and Wrong Orders. Based on this, the FLSA, and Defendant's knowledge that its sister restaurants settled three cases regarding the Tip Credit, Plaintiffs are entitled to a full award of Liquidated Damages. Plaintiffs have also shown there is no genuine issue of material fact that Defendant was in clear, reckless disregard to the Tip Credit with these facts. Plaintiffs are entitled to a Three-Year Statute of Limitations.

Plaintiffs' Memorandum in Support of Motion for Summary Judgment on
Liquidated Damages and Three-Year Statute of Limitations
C/A: 4:20-CV-00233-JD

                                        s/Bruce E. Miller
                                        Bruce E. Miller, Esq. (Fed Bar No. 3393)
                                        BRUCE E. MILLER, P.A.
                                        147 Wappoo Creek Drive, Suite 603
                                        Charleston, SC  29412
                                        T: 843.579.7373
                                        F: 843.614.6417
                                        bmiller@brucemillerlaw.com

                                        **ATTORNEY FOR PLAINTIFFS**

**CHARLESTON, SC**
**September 8, 2022**